**J. D. NORMAN, Appellant,**

v.

**LIBERTY LIFE ASSURANCE COMPANY, Appellee.**

Court of Appeals of Tennessee, Western Section.

May 12, 1977.

Certiorari Denied by Supreme Court Oct. 11, 1977.

Joe M. Haynes, Tyree B. Harris, Nashville, for appellant.

Charles C. Trabue, III, Nashville, for appellee.

NEARN, Judge.

The legal issue is whether or not there was coverage under a group disability insurance policy issued by Liberty Life Assurance Company of Boston.

J. D. Norman, an employee of Newspaper Printing Corporation was an insured under the terms of defendant's policy, which poli-

cy became effective on January 1, 1972. In 1973, Norman underwent a coronary bypass operation. The insuror denied that the policy afforded coverage and this suit resulted.

The policy contains the following provision:

"PRE–EXISTING CONDITIONS—No account shall be taken of any day of disability because of an injury or sickness on account of which any treatment shall have been given, or any charge shall have been incurred, or the protected person shall have been absent from work, within the period of 3 months immediately preceding the effective date of insurance with respect to the protected person, which day precedes the elapse of a period of 3 months, entirely subsequent to such date, during which period such person shall have received no treatment, shall have incurred no charge, and shall have not been absent from work on account of such injury or sickness."

It is agreed that the provision means that if an employee on January 1, 1972, was suffering from an injury or sickness on account of which any treatment had been given or any charge incurred within three months prior to January 1, 1972, no coverage would be afforded for that injury or sickness unless after January 1, 1972, the insured went for a period of three months during which he received no treatment for the initially uncovered injury or sickness and had not been absent from work. In the latter event, coverage would be afforded.

The fact issue was whether or not Norman underwent treatment during the prohibited period for the disease for which claim was made. A jury was demanded, but at the close of plaintiff's proof the Trial Judge granted defendant's motion for a directed verdict.

■ The appellate issue is whether there was any material disputed evidence from which the minds of reasonable men might conclude that plaintiff was not under treatment as meant in the policy provision. If there is such evidence present, the matter must be submitted to the jury. In making this determination, both this Court and the Trial Court must look at all the evidence, take the strongest legitimate view of it in favor of the opponent of the motion and allow all reasonable inferences from it in his favor; discard all countervailing evidence and if then there is any dispute as to any material determinative evidence or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. *Goings v. Aetna Casualty & Surety Co.* (1972 Tenn.App., W.S.) 491 S.W.2d 847.

■ The facts in their light most favorable to plaintiff are that in 1970 Norman became ill and was placed in a hospital. His condition was diagnosed by Dr. High, Norman's physician, as "arteriosclerotic cardiovascular disease with ischemic heart disease denoted by probable subendocardial myocardial infarction." Ischemia denotes an inadequacy of blood supply. The doctor did not advise Norman that he had or might have had a heart attack. Dr. High placed Norman on a diet, advised him to quit smoking, recommended walking two miles per day and prescribed Isordil to be taken by Norman on a daily basis to increase the blood supply to the heart and Valium as a tranquilizer. Also, Norman took nitroglycerin tablets whenever he had angina pectoris or heart related chest pains. Norman returned to Dr. High at two or three month intervals for examination. Usually an electrocardiogram reading was taken at each visit. From 1970 until shortly before the coronary bypass operation, Norman stayed on his diet, cut down on his smoking, continued walking (at least until the chest pains became too bad) and continued taking Valium, Isordil, and nitroglycerin tablets and continued with his visits to Dr. High.

Counsel for appellant argues that Norman did not know that he had had a heart attack in 1970, if in fact he had one, and that the "treatment" suggested by Dr. High was not treatment within the meaning of the policy but was prophylactic or preventative in nature and not treatment for a

"heart attack" and the jury could have so found. We think not.

 Whether Norman knew he had suffered a heart attack in 1970 is completely irrelevant to the issue. Norman made no representation one way or the other to obtain coverage. The existence of a state of facts, not knowledge of them, controls this case.

Neither does it make any difference whether or not Norman had actually suffered a "heart attack" in 1970. The record in this case reveals that a "heart attack" is an event which occurs when there is an insufficient supply of blood to the heart muscle. A myocardial infarction is the medical term for what laymen call a heart attack. A myocardial infarction is the death of all or a portion of the tissue of the heart muscle, usually caused by an insufficient blood supply. Angina pectoris is the manifestation of chest pains triggered by a growing blood deficiency to the heart. Increasing the blood supply will generally stop the pain of angina and no heart tissue death or myocardial infarction results.

Dr. High's testimony is to the effect that Norman was being treated for ischemic heart disease or a heart blood deficiency which treatment began prior to the inception date of the policy and continued until the coronary bypass operation which operation had as its purpose the correction of that blood deficiency to the heart. All of the treatment was prescribed to aid the heart blood supply and in an attempt to eliminate or alleviate the blood deficiency.

We find no error, overrule the Assignment of Error and affirm the judgment below.

Costs of appeal are adjudged against appellant and surety.

Done at Nashville in the two hundred and first year of our Independence and in the one hundred and eighty-second year of our Statehood.

MATHERNE and DROWOTA, JJ., concur.