**Bobby BRYAN, Cross-Plaintiff-Appellee,**

**v.**

**Charles Edward CAMPBELL, Cross-Defendant-Appellant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

May 23, 1986.

Application for Permission to Appeal Denied July 28, 1986.

James A. Hopper, Savannah, for cross-plaintiff-appellee.

Ron E. Harmon, Savannah, for cross-defendant-appellant.

CRAWFORD, Judge.

This is an appeal of a judgment on a jury verdict awarding compensatory and punitive damages for the tort of outrageous conduct.

Plaintiff, Bobby Bryan, owned a tavern known as The Inn Between in Hardin, County, which he had purchased from the defendant, Charles Edward Campbell. As security for the balance of the purchase price, Campbell had a trust deed on the property. The property was insured for fire and extended coverage by Overseas and Domestic Underwriters of Tennessee, and although the record is not entirely clear, it appears that Campbell was a loss payee under the policy.

A fire occurred March 27, 1984, which extensively damaged the tavern. The damage was repaired in April of 1984 by Paul Childers. The insurance company issued a check dated May 15, 1984, in the amount of $13,198.00 to pay for the repairs to the property and the check was made payable to Bobby Bryan, Charles Edward Campbell

and the Bank of Mississippi.[1] On that same date, Childers and Bryan located Campbell at the Iuka Hospital where Campbell was a patient and requested that Campbell endorse the check so that Childers could be paid. Campbell refused to endorse the check and referred them to his attorney in Mississippi who also represented the Bank of Mississippi. The Bank of Mississippi endorsed the check later, but Campbell refused to do so on several occasions.

On June 11, 1984, Childers filed suit in the Chancery Court against Bryan, Campbell, the Bank of Mississippi and the insurance company in which he sought judgment for the amount due him for the repairs to the property. The named defendants filed responsive pleadings joining issue on the complaint, and the insurance company tendered the money into court. On August 1, 1984, Bryan filed a cross-claim against Campbell alleging that Campbell's refusal to endorse the check was outrageous conduct that caused serious mental and financial injury to Bryan. Campbell filed an answer joining issue on the allegations of the cross-claim. On February 26, 1985, all matters in controversy, except Bryan's cross-claim against Campbell, were compromised, settled, and dismissed, and Bryan and Campbell stipulated that they wanted their case tried on submission to the jury for a general verdict.

The case proceeded to trial and the tort of outrageous conduct was the sole theory upon which Bryan relied and the sole theory charged by the court in the instructions to the jury. The jury returned a verdict against defendant for $4,500 compensatory damages and $4,500 punitive damages on which the court rendered the judgment resulting in this appeal.

Campbell has presented two issues for review by this Court, and the first issue, which we have rephrased, is whether there is any material evidence to support the verdict of the jury.

This Court's function in reviewing jury verdicts is succinctly stated in *Mason v.* *Tennessee Farmers Mutual Insurance Company,* 640 S.W.2d 561 (Tenn.App. 1982):

> Of course, in testing the validity of a plaintiff's jury award we must view the evidence in the light most favorable to plaintiff. This court has no right to weigh the evidence in a jury case, but must indulge every reasonable inference in favor of the plaintiff when there is material evidence in support of the verdict. *Houser v. Persinger,* 57 Tenn.App. 401, 405, 419 S.W.2d 179, 181 (1967). We must look at all the evidence, take the strongest legitimate view of it in favor of the plaintiff and allow all reasonable inferences in plaintiff's favor. *Norman v. Liberty Life Assurance Co.,* 556 S.W.2d 772, 773 (Tenn.App.1977); *Truan v. Smith,* 578 S.W.2d 73, 74 (Tenn.1979). Our duty upon review of conflicting evidence in a jury trial is not to determine where the truth lies, but only to determine if there was any material evidence to support the verdict below. *Davis v. Wilson,* 522 S.W.2d 872, 875 (Tenn.App. 1974); *Chattanooga Gas Co. v. Underwood,* 38 Tenn.App. 142, 149, 270 S.W.2d 652, 655 (1954). Even if we would have reached conclusions different from those reached by the jury, if there is some material evidence to support the verdict, it must be affirmed. *Davis v. Wilson, supra; Chattanooga Gas Co. v. Underwood, supra* at 149–150, 270 S.W.2d at 655–656.

*Id.* at 564.

The record reflects that Bryan received the insurance company check on or about May 15, 1984, and, at about that time, approached Campbell about endorsing the check while Campbell was a patient in the hospital. Bryan attempted to have Campbell endorse the check on approximately two other occasions prior to Childers filing his suit on June 11, 1984, seeking payment for the repair work. Bryan's cross-claim alleging outrageous conduct was filed in August, 1984, and at no time, prior thereto

---

**1.** The bank was holding the Bryan note and trust deed as collateral for a loan to Campbell.

nor subsequent thereto, did Bryan attempt to seek the trial court's assistance in requiring the endorsement of the check.

Bryan testified that Campbell told him that the reason he would not endorse the check was because the property had not been restored to the same condition it had prior to the fire. Bryan also stated that Campbell would not endorse the check because Campbell thought Bryan was going to obtain some of the proceeds personally.

Bryan further testified to the following: he was greatly upset when his tavern burned; his stress continually got worse "especially when Mr. Campbell wouldn't sign the check;" he was "all tore up" after Childers filed the lawsuit; he had to increase the dosage of his ulcer medicine from one tablet per day to four tablets per day, because his ulcers were bothering him more; he had great difficulty sleeping; he felt that his life was not worth anything and he was a nervous wreck; and after the lawsuit was filed he was unable to get insurance and was threatened with foreclosure, which forced him to sell the business on March 4, 1985, to a Ken Hurst.

Bryan presented witnesses who testified that the building's interior was better after the repairs had been made than it was prior to the fire. One of the workers who helped repair the tavern testified that while working on the repairs he overheard Campbell voice complaints about the quality of the work. One of Bryan's former employees testified that Bryan became such a "nervous wreck" that she had to quit working for him. She stated that after Campbell refused to endorse the check, Bryan increased his drinking to a point where he would get drunk.

We now must decide whether the above related evidence constitutes material evidence to sustain the verdict that defendant committed the tort of outrageous conduct.

In *Medlin v. Allied Investment Company*, 217 Tenn. 469, 398 S.W.2d 270 (1966), our Supreme Court recognized the tort of outrageous conduct as provided in the *Restatement (2d) of Torts*, § 46(1), which we quote:

46. *Outrageous Conduct Causing Severe Emotional Distress*

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The *Medlin* Court, quoting from the *Restatement*, pointed out:

It is for the Court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether it is necessarily so. *Restatement (2d) of Torts*, § 46—Comment—p. 77.

*Medlin*, 217 Tenn. at 481, 398 S.W.2d at 275.

Subsequent to *Medlin*, the courts have noted the extreme difficulty in establishing a test or legal standard for determining whether particular unseemly conduct is so intolerable as to be tortious. *See Goldfarb v. Baker*, 547 S.W.2d 567 (Tenn.1977); *Nelson v. Ford Motor Credit Co.*, 621 S.W.2d 573 (Tenn.App.1981).

An often quoted test or standard is *Restatement (2d) of Torts*, § 46, Comment d, which states in part:

d. *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average

member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

In *Swallows v. Western Electric Company, Inc.,* 543 S.W.2d 581 (Tenn.1976), the Supreme Court held:

> Liability for the tort of "outrageous conduct" exists only where (1) the conduct of the defendants has been so outrageous in character, and so extreme in degree, as to be beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society, and (2) the conduct results in serious mental injury.

*Id.* at 582.

In the case before us, Campbell had a security interest in the property damaged by the fire and certainly had an interest in seeing that his security was unimpaired. We construe this record as proving that Campbell was wrong in his belief that the repairs had not been properly performed; however, this does not prove that Campbell intentionally and willfully set about to cause harm to Bryan. It is quite significant, in our view, that the original lawsuit was filed less than 30 days after Campbell first refused to sign the check and yet Bryan made no effort to have the court intervene and require the signing of the check because Campbell was improperly refusing to do so. Giving Bryan the benefit of all the evidence in his favor, this record indicates a dispute between a mortgagor and a mortgagee concerning the repairs made to the security and does not indicate conduct on the part of Campbell that is "so outrageous in character, and so extreme in degree, as to be beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Swallow,* 543 S.W.2d at 582. This Court cannot accept the contention that "the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, 'Outrageous!'" *Restatement (2d) of Torts,* § 46, Comment d.

We find no material evidence to sustain the verdict on the basis of outrageous conduct. Therefore, the judgment of the trial court is reversed, and this case is dismissed. In view of our decision on the first issue we find it unnecessary to consider the second issue presented. Costs are assessed against appellee.

TOMLIN, P.J. (W.S.) and HIGHERS, J., concur.