Jerry BAIN and wife Sue Bain,
Plaintiffs/Appellees,

v.

Dr. Wayne WELLS, Defendant,

and

National Medical Enterprises, Inc., New Beginnings Center, University Medical Center and National Recovery Centers of America, Defendants/Appellants.

Supreme Court of Tennessee,
at Nashville.

Jan. 13, 1997.

Henry Clay Barry, Lebanon, for Plaintiffs/Appellees.

William C. Moody, Moody, Whitfield & Castellarin, Nashville, for Defendants/Appellants.

## OPINION

DROWOTA, Judge.

Defendants,[1] National Medical Enterprises, Inc., New Beginnings Center, University Medical Center and National Recovery Cen-

---

1. Plaintiffs voluntarily dismissed by nonsuit the action against Dr. Wayne Wells. Therefore, he is not a party to this appeal.

ters of America, sought and obtained permission to appeal from the Court of Appeals' affirmance of the trial court's denial of their request for summary judgment. We are asked to determine whether a hospital's policy of placing patients known to be infected with the human immunodeficiency virus (HIV or the AIDS virus) in the same room with patients who are not infected with the virus without warning or obtaining the consent of the non-infected patients constitutes outrageous conduct or negligent infliction of emotional distress.

We have determined under the proof in the record that the hospital's nonsegregation placement policy is in accordance with current health care standards; therefore, as a matter of law, it does not constitute outrageous conduct. In addition, we conclude that the claim for negligent infliction of emotional distress must fail as a matter of law because plaintiff, Jerry Bain, has failed to offer evidence that he actually was exposed to HIV as a result of the hospital's placement policy. Accordingly, the judgment of the Court of Appeals affirming the trial court's denial of summary judgment is reversed and summary judgment is entered in favor of the defendants.

### BACKGROUND

In September of 1991, Jerry Bain was admitted as a patient in the New Beginnings Center, an alcohol and drug rehabilitation center on the property of University Medical Center[2] in Lebanon, Tennessee. Without his knowledge or consent, Bain was placed in a room with another patient who had tested positive for HIV. Bain occupied the same room with the HIV-infected patient for approximately eight days. During that time, they shared a bathroom and Bain had an open cut on his buttock. Additionally, on one occasion, Bain mistakenly used his roommate's disposable razor. Following that incident, Bain's roommate told Bain that he was infected with HIV. Bain left the hospital before the completion of his scheduled treatment program, but later returned, completed the program, and was discharged on October 18, 1991.

Thereafter, Bain and his wife sued the defendants alleging that the hospital's policy of placing HIV-infected patients in the same room with patients not infected with the virus, without warning or obtaining the prior consent of the non-infected patients, constitutes outrageous conduct and a deviation from the standard of care in the community. As a result of the defendants' outrageous conduct and negligence, Bain alleged that he had suffered great worry and emotional distress because he fears he may possibly have become infected with the AIDS virus and in turn, may infect his wife and child. Bain also alleged that he had incurred monetary damages in being tested for HIV and in being treated for emotional distress. Finally, Bain and his wife alleged that their normal marital life had been "compromised," as a result of the defendants' outrageous conduct and negligence and each claimed loss of consortium.

The defendants filed a motion for summary judgment in which they asserted that the policy of housing patients infected with HIV together with noninfected patients was consistent with acceptable medical practice and, therefore, could not constitute outrageous conduct or negligence. In addition, the defendants maintained that Bain had failed to allege actual exposure to the AIDS virus through a medically recognized method of transmission. In support of their motion, defendants submitted the affidavit and deposition of Dr. William Schaffner, II, M.D., chairman of the Department of Preventive Medicine and professor in the Department of Preventive Medicine and the Division of Infectious Diseases at Vanderbilt University Medical Center. Dr. Schaffner is also a member of the Technical Panel on Infections within Hospitals of the American Hospital Association which publishes recommendations for hospitals entitled "Management of HIV Infection in the Hospital."

Dr. Schaffner stated that, in his opinion, the hospital did not deviate from accepted medical practice by placing HIV-infected pa-

---

2. The rehabilitation center is operated by defendants, University Medical Center and National Recovery Centers of America, both of which are operated by defendant, National Medical Enterprises, Inc.

tients in rooms with patients not infected with the virus. As a basis for his opinion, Dr. Schaffner cited the recommendations of the Technical Panel on Infections within Hospitals of the American Hospital Association, which suggests segregation of patients infected with HIV in the following three limited circumstances: (1) the patient has other airborne transmissible infections; (2) the patient is violent; or (3) the patient is so ill with AIDS that he or she is unable to control body fluids. Dr. Schaffner also stated that "information about the HIV status of a patient should be available only to individuals directly involved in the patient's care." Revealing to Bain his roommate's HIV-infected status, in Dr. Schaffner's view, would have violated the recognized standard of care. In addition, defendants argued that they were prohibited by federal law from disclosing the roommate's medical condition to anyone other than qualified personnel.

As to Bain's claim that the hospital's negligence caused him to suffer severe emotional distress, Dr. Schaffner stated that based upon his review of Jerry Bain's medical records at the University Medical Center, it was his opinion that "Jerry Bain did not suffer exposure to HIV and, a person experiencing circumstances set out in the materials I have reviewed would have no reasonable fear of contracting HIV." According to Dr. Schaffner, the modes of transmission of the AIDS virus fall into three broad categories, sexual transmission, blood transmission, and transmission from a pregnant woman to her unborn child. Dr. Schaffner stated that a person cannot contract the AIDS virus by sharing a toilet seat or a disposable razor with an HIV-infected person. Even assuming a medically viable mode of transmission, however, Dr. Schaffner said that 99 percent of people infected with HIV test positive for the virus within three months of infection, and "virtually always" within six months.

In response to the motion for summary judgment, Bain submitted an affidavit from the administrator of Carthage General Hospital in Carthage, Tennessee. While stating that Carthage General places patients with life threatening contagious disorders in private rooms, the administrator conceded that "HIV is not specifically defined in our policy as one of these disorders."

Bain also submitted an affidavit. He said that the defendants never informed him that his roommate was HIV positive and advised his roommate to not disclose that fact. Bain said that he was given neither verbal nor written warnings with respect to appropriate precautionary measures. During the course of shaving, Bain said he normally cuts or scapes himself several times and has suffered emotional distress since discovering that he mistakenly used his roommate's razor. Bain's affidavit contained no statement, however, as to whether the razor had blood on it when he began shaving or whether he actually cut or scraped himself the day he mistakenly used the razor. Nonetheless, Bain said that he suffers emotional distress because he fears that he might possibly be infected with the "deadly disorder and that I might have, in turn, infected my wife and child." Bain admitted that as of March 1, 1994, two and one-half years after his hospitalization, he had undergone several HIV tests, all of which had been negative.

Based on the record summarized above, the trial court denied the defendants summary judgment, but granted them permission to seek an interlocutory appeal. The Court of Appeals granted the interlocutory appeal and affirmed the trial court's denial, concluding that while the defendants' room assignment policy did not constitute a deviation from accepted medical standards, summary judgment was not appropriate on Bain's outrageous conduct claim relating to the defendants' failure to inform Bain about his roommate's HIV positive status, since the "[d]efendants have offered no evidence that this was not wrongful."

As to Bain's claim for negligent infliction of emotional distress, the Court of Appeals found that the defendants had proven by uncontradicted and unequivocal evidence that Bain was not exposed to HIV by his mere placement in a room with an HIV-infected roommate. However, the Court of Appeals concluded the defendants had "failed to carry their burden of proving by uncontradicted and unequivocal evidence that Mr. Bain was

not exposed to the HIV virus by use of the razor or toilet facilities."

Thereafter, we granted the defendants permission to appeal and now, for the reasons explained below, reverse the judgment of the Court of Appeals affirming the trial court's denial of summary judgment.

## STANDARD OF REVIEW

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower courts' judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn.1991). Tenn. R. Civ. P. 56.03 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn.1993). The moving party has the burden of proving that its motion satisfies these requirements. *Downen v. Allstate Ins. Co.,* 811 S.W.2d 523, 524 (Tenn.1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *Byrd,* 847 S.W.2d at 215.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *Byrd,* 847 S.W.2d at 210–11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *Id.*

Although the standards are strict, in this case summary judgment is appropriate. Contrary to the Court of Appeals' conclusion, once the defendants submitted proof to negate the existence of material facts, the burden shifted to the plaintiffs to offer countervailing factual evidence to establish the existence of a material factual dispute requiring resolution by the trier of fact. Based on our de novo review of the evidence in the record, we conclude the plaintiffs failed to satisfy that burden.

## OUTRAGEOUS CONDUCT

In *Medlin v. Allied Inv. Co.,* 217 Tenn. 469, 479, 398 S.W.2d 270, 274 (1966), this Court recognized the tort of outrageous conduct,[3] quoting with approval § 46(1) of the Restatement (Second) of Torts, which provides as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Accordingly, under Tennessee law, there are three essential elements to a cause of action: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury. *Id.*; *see also Johnson v. Woman's Hospital,* 527 S.W.2d 133, 144 (Tenn.App.1975).

We emphasized in *Medlin* that liability for mental distress damages clearly "does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Id.,* 398 S.W.2d at 274 (internal quotations omitted). Although no perfect legal standard exists for determining whether particular conduct is so intolerable as to be tortious, this Court has adopted and applied the high threshold standard described

---

3. Intentional infliction of emotional distress and outrageous conduct are not two separate torts, but are simply different names for the same cause of action. *Moorhead v. J.C. Penney Co., Inc.,* 555 S.W.2d 713, 717 (Tenn.1977).

in the Restatement (Second) of Torts as follows:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Medlin*, 217 Tenn. at 479, 398 S.W.2d at 274 quoting, Restatement (Second) of Torts § 46 comment d (1965); *see also Goldfarb v. Baker*, 547 S.W.2d 567, 568–69 (Tenn.1977); *Blair v. Allied Maintenance Corp.*, 756 S.W.2d 267, 273 (Tenn.App.1988); *Holt v. American Progressive Life Ins. Co.*, 731 S.W.2d 923, 926–27 (Tenn.App.1987); *Bryan v. Campbell*, 720 S.W.2d 62, 64–65 (Tenn.App.1986). As this Court stressed in *Medlin*, it is the court's duty in the first instance to apply that standard and determine "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery...." *Id.*, 217 Tenn. at 479, 398 S.W.2d at 274, quoting Restatement (Second) of Torts § 46, comment h; *Dunn v. Moto Photo, Inc.*, 828 S.W.2d 747 (Tenn.App.1991); *Bryan*, 720 S.W.2d at 64–65.

In this case, it is clear that neither the defendants' patient housing policy nor their failure to inform Bain about his roommate's HIV positive status constitutes outrageous conduct. The undisputed facts of record establish that the defendants complied with applicable health care standards relating to patient housing. Dr. Schaffner stated, both in his deposition and affidavit, that placing HIV-infected patients in the same room with patients who are not infected is only prohibited by the recommendations of the American Hospital Association in three narrow circumstances, none of which existed in this case. The hospital administrator's affidavit submitted by Bain in response did not refute Dr. Schaffner's testimony since he admitted that HIV is not defined by Carthage General Hospital as a disorder which requires placing patients in private rooms.

Moreover, contrary to the Court of Appeals' conclusion, Dr. Schaffner also stated that the applicable medical standard of care was not violated by failing to inform Bain of his roommate's HIV positive status. The defendants, therefore, offered factual proof to establish that their conduct did not violate applicable health care standards and was not "beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Bain offered no evidence to dispute the defendants' factual proof. Consequently, the undisputed facts establish that the defendants did not violate applicable medical standards relating to inpatient housing. Where the proof does not show that a defendant has violated applicable health care and legal standards, the conduct cannot reasonably be characterized as "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Based on the undisputed facts we conclude, as a matter of law, that the defendants' conduct was not outrageous. Having so concluded, we must next consider Bain's claim for negligent infliction of emotional distress.

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Relying upon *Carroll v. Sisters of Saint Francis*, 868 S.W.2d 585 (Tenn.1993), defendants argue that they are entitled to summary judgment because Bain has failed to allege actual exposure to the AIDS virus.

In *Carroll*, the plaintiff sued a hospital to recover for her fear of contracting AIDS after pricking her fingers on discarded needles while trying to withdraw a paper

towel from a container located on the wall near the sink. There we held that to recover emotional damages based on the fear of contracting AIDS, "a plaintiff must prove, at a minimum, that he or she was actually exposed to HIV." *Id.*, 868 S.W.2d at 594. Assuming that the plaintiff was actually exposed to HIV, liability will attach only to the extent that the resulting emotional distress was within the range of that experienced by an ordinary reasonable person under the circumstances. Damages recoverable for emotional distress will be confined to the time between discovery of the exposure and the negative medical diagnosis or other information that puts to rest the fear of contracting AIDS. *Id.*, 868 S.W.2d at 594. While we did not abandon the common law rule requiring plaintiffs claiming emotional distress damages to allege and prove a physical injury or physical manifestation, we acknowledged that our holding was a relaxation of the requirement.

> Many actions for emotional damages brought today are radically different from the cases which gave rise to the [physical injury] requirement in that they involve an exposure to an extremely dangerous agent—such as asbestos, dioxin, or HIV—which may have serious adverse health consequences at some point far into the future. Given this fact, this Court has realized that in some situations, whether the plaintiff has incurred a literal physical injury has little to do with whether the emotional damages complained of are reasonable.

*Id.* (footnotes omitted).

■■■ Recently, in *Camper v. Minor*, 915 S.W.2d 437 (Tenn.1996), we revisited the tort of negligent infliction of emotional distress to consider the continuing viability of the "physical manifestation" or "injury" rule. Concluding that the rule had proven to be confusing, rigid, and inadequate in practice, we abandoned the physical injury rule and adopted instead the general negligence approach. *Id.*, 915 S.W.2d. at 446. To avoid summary judgment under the general negli-

gence approach, a plaintiff must present material evidence as to each of the five elements of negligence—duty, breach of duty, injury or loss, causation in fact, and proximate, or legal cause. *Id.* Moreover, recovery is only appropriate for "serious" or "severe" emotional injury which is established by expert medical or scientific proof. *Id.*

Bain insists that our adoption of the general negligence approach in *Camper* negates our decision in *Carroll* requiring a showing of actual exposure to HIV as a part of a prima facie case of negligent infliction of emotional distress.

■■■ We disagree. In *Carroll*, we simply recognized that emotional distress injuries may be reasonable even though the plaintiff sustains no physical injury and experiences no physical manifestation. Implicitly, however, we held that emotional distress injuries are not reasonable, as a matter of law, in a fear of contracting AIDS case unless the plaintiff actually has been *exposed*[4] to HIV.

■■■ The concept of reasonableness underlying our decision in *Carroll* is completely consistent with the negligence approach adopted in *Camper*. Indeed, it is well-established that to recover on a claim of negligence, a plaintiff must show some *reasonable* connection between the act or omission of a defendant and the injury which the plaintiff has suffered. *See* Prosser & Keeton, *The Law of Torts*, § 54 (5th ed. 1984); *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991). The legal term of art which describes that "reasonable connection" is proximate cause. Prosser & Keeton, *The Law of Torts*, § 41 (5th ed. 1984). Under our decision in *Carroll*, therefore, proof of actual exposure is necessary to establish that reasonable connection between the act or omission of a defendant and the emotional distress of a plaintiff who fears contracting AIDS. Therefore, contrary to Bain's insistence, *Carroll's* requirement of proof of actual exposure to HIV is entirely consistent with the general negligence approach adopted in *Camper*. *See also Brzoska v. Olson*, 668 A.2d 1355

---

4. Proof that the plaintiff actually contracted HIV is not necessary to recover emotional distress injuries under *Carroll*.

(Del.1995); *Russaw v. Martin,* 221 Ga.App. 683, 472 S.E.2d 508, 511–12 (1996).

Moreover sound public policy considerations support requiring proof of actual exposure to HIV. The Delaware Supreme Court aptly analyzed the purpose and importance of an actual exposure requirement as follows:

> AIDS is a disease that spawns widespread public misperception based upon the dearth of knowledge concerning HIV transmission. Indeed, plaintiffs rely upon the degree of public misconception about AIDS to support their claim that their fear was reasonable. To accept this argument is to contribute to the phobia. Were we to recognize a claim for the fear of contracting AIDS based upon a mere allegation that one *may* have been exposed to HIV, totally unsupported by any medical evidence, or factual proof, we would open a Pandora's Box of "AIDS-phobia" claims by individuals whose ignorance, unreasonable suspicion or general paranoia cause them apprehension over the slightest of contact with HIV-infected individuals or objects. Such plaintiffs would recover for their fear of AIDS, no matter how irrational. We believe the better approach is to assess the reasonableness of a plaintiff's fear of AIDS according to the plaintiff's *actual*—not *potential*— exposure to HIV.

*Brzoska,* 668 A.2d at 1363 (emphasis in original) (footnotes omitted); *see also K.A.C. v. Benson,* 527 N.W.2d 553, 559 (Minn.1995) (discussing public policy considerations).

 While proximate cause is to some extent associated with the nature and degree of the connection in fact between the defendant's acts and the events of which the plaintiff complains, often to a greater extent, however, the legal limitation on the scope of liability is associated with policy—"with our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient." Prosser

& Keeton, *The Law of Torts,* § 41, p. 264 (5th ed. 1984). Moreover, considerations of public policy are also crucial in determining the existence of a separate element of negligence—legal duty. Indeed, imposition of a legal duty reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's actions or conduct. *Bradshaw v. Daniel,* 854 S.W.2d 865, 870 (Tenn.1993). Our decision in *Carroll,* therefore, also stands for the proposition that in the absence of proof of an actual exposure to HIV, public policy imposes no legal duty to protect against the fear of contracting AIDS.

Reviewing the facts of this case in the light most favorable to the plaintiff, it is clear that there are no disputed facts as to the issue of actual exposure to HIV. The *only* medical expert proof in the record unequivocally states that Bain was not actually exposed to HIV during his hospitalization. Indeed, Dr. Schaffner said that a person *cannot* contract the AIDS virus by sharing a toilet seat or a disposable razor with a person infected with HIV because HIV is transmitted only through fluid to fluid contact or exposure.[5] Bain offered no evidence to refute Dr. Schaffner's statements or show a medically valid channel of transmission. Indeed, Bain conceded in his brief to the Court of Appeals that it is "unknown whether or not the person infected with HIV had cut himself or not with the razor or whether or not the Appellee cut himself with it when he used it." Finally, Bain admitted in his affidavit filed two and one-half years after his hospitalization and the alleged exposure that he has repeatedly tested negative for HIV. Because Bain offered no evidence of actual exposure and no evidence of a medically recognized channel of transmission, he has failed to establish proximate cause, an essential element of a claim for negligent infliction of

---

5. The specific modes of documented HIV transmission have been cited and discussed in cases from other jurisdictions and include: unprotected sexual intercourse with an HIV-infected person; contact with HIV-infected blood, blood components, or blood products by parenteral mucous membrane or nonintact skin; transplants of HIV-infected organs and/or tissues;

transfusions of HIV-infected blood; artificial insemination of HIV-infected semen; and perinatal transmission from mother to child around the time of birth. *K.A.C.,* 527 N.W.2d at 558, citing Garry G. Mathiason & Steven B. Berlin, *AIDS in the Healthcare, Business, and Governmental Workplace,* C902 ALI–ABA 731, 737 (1994).

emotional distress.[6] Moreover, Bain has failed to establish that defendants had a duty to inform him of his roommate's HIV status. The hospital owes no duty to protect against the irrational fear of contracting AIDS. Therefore, the defendants are entitled to summary judgment.

## CONCLUSION

For the reasons explained above, the Court of Appeals' affirmance of the trial court's denial of summary judgment is reversed and summary judgment is granted in favor of the defendants. Costs of this appeal are taxed to the plaintiffs, Jerry and Sue Bain, for which execution may issue if necessary.

BIRCH, C.J., ANDERSON and REID, JJ., and O'BRIEN, Special Judge, concur.

---

**6.** Additionally, we note that Bain offered nothing to establish the defendants breached the standard of ordinary reasonable care under the circumstances. In fact, the proof in the record is that the hospital's patient housing policy complied with current health care standards and that defendants had no duty to inform Bain of his roommate's HIV status. Customary conduct, while not conclusive or controlling, may be considered as furnishing a standardized gauge and as one fact to be weighed in determining whether or not ordinary care has been exercised. *Hames v. State,* 808 S.W.2d 41, 45 (Tenn.1991).