IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

# IDA FAYE WINSTEAD, ET AL. v. GOODLARK REGIONAL MEDICAL CENTER, INC.

**Direct Appeal from the Circuit Court for Dickson County**
**No. CV-344     Allen Wallace, Judge**

---

**No. M1997-00209-COA-R3-CV - Decided April 4, 2000**

---

This appeal involves a pedestrian who slipped and fell on a brightly painted sloping access ramp cut into the sidewalk near the entrance of the Goodlark Regional Medical Center in Dickson. The pedestrian and her husband filed suit in the Circuit Court for Dickson County alleging that the hospital=s maintenance of the ramp had created a dangerous condition on the sidewalk. A jury found the hospital sixty percent at fault and awarded the pedestrian and her husband $103,800. The trial court denied the hospital=s motions for a new trial, a judgment in accordance with its motion for a directed verdict, or a remittitur. The hospital asserts on this appeal that the trial court erred by failing to grant its motion for a judgment in accordance with its motion for a directed verdict. We have determined that the trial court properly denied the hospital=s post-trial motions and, accordingly, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded.**

KOCH, J., delivered the opinion of the court, in which TODD, P.J., M.S., and CANTRELL, J., joined.

Thomas M. Pinckney, Jr. and Susan D. Bass, Nashville, Tennessee, for the appellant, Goodlark Regional Medical Center, Inc.

Joe Bednarz and Joe Bednarz, Jr., Nashville, Tennessee, for the appellees, Ida Faye Winstead and Don Winstead.

**OPINION**

The entrance to the Goodlark Regional Medical Center is separated from the driveway and parking lot by a concrete sidewalk. The curb of the sidewalk closest to the driveway is painted red. Because the surface of the sidewalk is higher than the surfaces of the driveway and parking lot, Goodlark constructed a sloped ramp in the sidewalk near its entrance to facilitate the movement of persons with disabilities between the parking lot and the front door. The entire ramp is painted bright yellow and usually contains four or five black traction strips running parallel to the direction of pedestrian traffic on the sidewalk to provide extra traction for persons using the ramp. A trial exhibit

depicted the customary condition of this ramp as follows:



The effects of weather and pedestrian traffic on the access ramp required Goodlark to periodically repaint the ramp and to replace the black traction strips. When Goodlark=s maintenance personnel repaint the ramp, they remove the existing traction strips, repaint the entire ramp, and then install new traction strips after the paint dries. While the entire process generally requires less than one day to complete, rainy weather can delay replacing the traction strips because these strips cannot be affixed on a wet surface.

Ida Winstead and her husband both had diagnostic tests scheduled at Goodlark on March 2, 1993. Ms. Winstead had been to Goodlark on numerous occasions over the years and was familiar with the entrance, the sidewalk, and the access ramp in the sidewalk. On this particular day, the black traction strips were not on the access ramp because the ramp had recently been painted and because rain had delayed the installation of the new strips. The maintenance personnel had not placed cones, signs, or other devices around the ramp to warn pedestrians to avoid it. An exhibit introduced at trial portrayed the condition of the access ramp when Ms. Winstead fell as follows:



It was raining lightly when Ms. Winstead and her husband left the hospital following their appointments. They were walking along the sidewalk toward the parking lot when another pedestrian approached them walking toward the hospital≤s front door. Ms. Winstead kept walking but moved to the outside portion of the sidewalk near the red curb to permit the approaching pedestrian to pass. When she arrived at the access ramp in the sidewalk, she stepped on the most steeply sloped portion of the ramp≤s flared sides which were wet with rain. As she stepped on the ramp, Ms. Winstead lost her footing and fell, fracturing her kneecap.

Ms. Winstead and her husband filed suit against Goodlark in the Circuit Court for Dickson County asserting that the hospital had created or maintained a dangerous condition in the sidewalk.[1] At trial, the Winsteads argued to the jury that Goodlark had been negligent either because it did not paint the sidewalk with non-skid paint, because it did not immediately replace the traction strips, or because it failed to rope off the access ramp until the traction strips had been replaced. Goodlark responded by asserting that it had chosen the correct paint for the access ramp and that Ms. Winstead≤s inattentiveness caused her to fall because the brightly painted access ramp was Aopen and obvious@ to pedestrians using the sidewalk.

The jury determined that Ms. Winstead was forty percent at fault and that Goodlark was sixty percent at fault. The jury also determined that Ms. Winstead≤s damages were $167,000 and that Mr. Winstead≤s damages were $6,000. Accordingly, the trial court entered a $100,200 judgment for Ms. Winstead and a $3,600 judgment for Mr. Winstead. In its post-trial motions, Goodlark asserted that it was entitled to a new trial, that it was entitled to a judgment in accordance with its motion for a directed verdict at the close of all the proof, or, in the alternative, that it was entitled to a remittitur. The trial court denied the motions and approved the jury≤s verdict.

# I.
## STANDARD OF REVIEW

Goodlark asserts on this appeal that the trial court erred by failing to grant its Tenn. R. Civ. P. 50.02 motion for a judgment in accordance with its motion for a directed verdict.[2] Appellate courts use the same standard for reviewing the denial of a Tenn. R. Civ. P. 50.02 motion that they use for reviewing the denial of a Tenn. R. Civ. P. 50.01 motion for a directed verdict. *See Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977). Accordingly, appellate courts do not weigh the evidence, *see Conaster v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Benton v. Snyder*, 825 S.W.2d 409, 413 (Tenn. 1992), or evaluate the credibility of the witnesses. *See Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630, 638-39 (Tenn. Ct. App. 1993). Rather, they

---

[1]The Winsteads also named The Jackson Clinic as a defendant but later voluntarily dismissed their claims against The Jackson Clinic because the clinic did not own or control the premises where Ms. Winstead fell.

[2]These motions are also known in state court as a motion for judgment notwithstanding the verdict or j.n.o.v. (judgment non obstante verdicto) or in federal court as a post-verdict judgment as a matter of law in accordance with Fed. R. Civ. P. 50(b).

review the evidence most favorably to the party against whom the motion is made, give that party the benefit of all reasonable inferences from the evidence, and disregard all evidence contrary to that party=s position. *See Eaton v. McClain*, 891 S.W.2d 587, 590 (Tenn. 1994); *Gann v. International Harvester Co.*, 712 S.W.2d 100, 105 (Tenn. 1986).

Granting a Tenn. R. Civ. P. 50.02 motion is appropriate only when the evidence is insufficient to create an issue for the jury to decide, *see Underwood v. Waterslides of Mid-America, Inc.*, 823 S.W.2d 171, 176 (Tenn. Ct. App. 1991); *Norman v. Liberty Life Assurance Co.*, 556 S.W.2d 772, 773 (Tenn. Ct. App. 1977), or when reasonable minds can reach only one conclusion. *See Williams v. Brown*, 860 S.W.2d 854, 857 (Tenn. 1993); *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980). A jury=s verdict should not be supplanted under Tenn. R. Civ. P. 50.02, even if the facts are undisputed, when reasonable persons could draw conflicting conclusions from the facts. *See Gulf, M. & O.R.R. v. Underwood*, 182 Tenn. 467, 474, 187 S.W.2d 777, 779 (1945); *Pettus v. Hurst*, 882 S.W.2d 783, 788 (Tenn. Ct. App. 1993).

## II.
### GOODLARK=S TENN. R. CIV. P. 50.02 MOTION

Goodlark advances three theories to support its argument that the trial court should have granted its Tenn. R. Civ. P. 50.02 motion for a judgment in accordance with its motion for a directed verdict. First, it asserts that it had no duty to warn pedestrians of the access ramp because its condition was open and obvious. Second, it asserts that it discharged its duty to warn pedestrians of the ramp by painting the ramp bright yellow. Third, it asserts that Ms. Winstead was at least fifty percent at fault because she failed to watch her step when she walked across the access ramp. We will take up each of these arguments in turn.

## A.
### THE OPENNESS AND OBVIOUSNESS OF THE ACCESS RAMP

Many traditional, common-law tort concepts lost their independent existence after the Tennessee Supreme Court embraced the doctrine of comparative fault in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992). In the years since the *McIntyre* decision, the contributory negligence doctrine, the last clear chance doctrine, the sudden emergency doctrine, the rescue doctrine, and the doctrine of secondary implied assumption of the risk have been merged into the comparative fault scheme and are simply factors to consider when apportioning fault among the parties. *See Eaton v. McClain*, 891 S.W.2d at 592; *Perez v. McConkey*, 872 S.W.2d 897, 905 (Tenn. 1994). The Aopen and obvious@ doctrine[3] has not met the same fate. Even though its lineage can be traced to the doctrine of assumption of the risk, the Tennessee Supreme Court has declined to treat the Aopen and

---

[3] The open and obvious doctrine provided that a premises owner was not liable for injuries caused by dangers that are Aobvious, reasonably apparent, or as well known to the invitee as to the owner.@ *Kendall Oil Co. v. Payne*, 41 Tenn. App. 201, 205, 293 S.W.2d 40, 42 (1955). It was premised on the belief that an Ainvitee assumes all normal and obvious risks attendant to the use of the premises.@ *Kendall Oil Co. v. Payne*, 41 Tenn. App. at 205-06, 293 S.W.2d at 42.

obvious@ doctrine as one of the factors to consider when apportioning fault among the parties. Instead, the Court has Alimited@ the doctrine by holding that a property owner will not be relieved of its duty to exercise reasonable care simply because a dangerous condition is open and obvious. *See Coln v. City of Savannah*, 966 S.W.2d 34, 43 (Tenn. 1998).[4]  While the openness and obviousness of an allegedly dangerous condition is a factor for the court to consider when determining the existence and extent of a property owner=s duty, the Court has held that Athe duty issue must be analyzed with regard to [the] foreseeability and gravity of [the] harm, and the feasibility and availability of alternative conduct that would have prevented the harm.@ *Coln v. City of Savannah*, 966 S.W.2d at 43.

The Tennessee Supreme Court, employing the *Coln* rule, held that a three-eighths inch change in elevation between a brick sidewalk and a concrete sidewalk, although open and obvious, created a foreseeable risk of harm that was actually known by the city.  This knowledge, coupled with the city=s actual knowledge of the availability of corrective measures, warranted a conclusion that the city owed a duty to the public to either remove or repair the condition.  In the Court=s words, Athe risk of harm was unreasonable despite its open and obvious nature and the foreseeability and gravity of harm, therefore, outweighed the burden imposed in protecting against the harm.@ *Coln v. City of Savannah*, 966 S.W.2d at 44.

The Tennessee Supreme Court employed the same analysis in a companion case to *Coln.* There the homeowners left an 18" × 3' hole in their pool deck after they removed a skimmer used to clean the pool.  A guest who fell into the uncovered hole sued the homeowners, but the trial court granted the homeowners a summary judgment based on the Aopen and obvious@ doctrine.  In reversing the summary judgment, the Court held that despite the openness and obviousness of the large hole in the pool deck, there existed material factual disputes regarding whether the homeowners owed a duty to their guest because the foreseeability and gravity of the harm outweighed the burden of protecting against the harm. *See Coln v. City of Savannah*, 966 S.W.2d at 46.

Goodlark asserted at trial and argues on appeal that it owed no duty to protect pedestrians from the danger of slipping and falling on the access ramp because it was Aopen and obvious,@ having been painted yellow to differentiate it from the surrounding unfinished concrete sidewalk.  Based on the reasoning of the *Coln* decision, Goodlark=s lack-of-duty argument cannot succeed.  Goodlark=s maintenance personnel were aware of the access ramp and of the possibility that it could pose a hazard to persons entering and leaving the hospital.  It is reasonable to conclude that this knowledge prompted Goodlark to paint the ramp yellow and to install traction strips.  It is also undisputed that Goodlark=s maintenance personnel knew that the access ramp required periodic maintenance and that

---

[4]Lest we be accused of reading the Court=s *Coln* opinion too narrowly, we point out that the Court itself stated that the separate analysis of duty, including the consideration of the openness and obviousness of the danger, has not been totally subsumed into the allocation of fault. *See Coln v. City of Savannah*, 966 S.W.2d at 44.  Likewise, the author of a separate concurring opinion took her colleagues to task for not concluding that Athe doctrine of >open and obvious= has been subsumed into the comparative fault scheme.@ *Coln v. City of Savannah*, 966 S.W.2d at 47 (Holder, J., concurring).

if not properly maintained, it could pose a danger to pedestrians entering and leaving the hospital.

In light of the evidence that the jury heard, a reasonable fact-finder could conclude that it was foreseeable that an improperly maintained access ramp could cause injury to pedestrians. A reasonable fact-finder could also conclude that the gravity of the potential injury outweighed the burden of properly maintaining the ramp. Accordingly, Goodlark was not entitled to a Tenn. R. Civ. P. 50.02 judgment notwithstanding the verdict solely on the ground that the access ramp was open and obvious.

**B.**
**GOODLARK=S MAINTENANCE OF THE RAMP**

Goodlark also asserts that it was entitled to a judgment in accordance with its motion for a directed verdict because it discharged its duty by painting the access ramp with bright yellow paint. While painting the ramp may very well have discharged Goodlark=s duty to warn pedestrians of the ramp=s existence, it does not necessarily foreclose the possibility that a reasonable fact-finder could conclude that either the hospital=s choice of paint or the manner in which it maintained the ramp caused the ramp to be more dangerous than it might otherwise have been.

The Winsteads= theory of negligence, reduced to its essence, is that a freshly painted access ramp without the traction strips reinstalled was more slippery when rained upon than a ramp painted with non-skid paint or a ramp with traction strips. Accordingly, the Winsteads argued that Goodlark=s maintenance employees should have either painted the ramp with non-skid paint, reinstalled the traction strips more quickly, or blocked off the ramp while it was being maintained.[5] The record contains sufficient evidence to take these questions to the jury.

Two former Goodlark maintenance personnel testified at trial. Both stated that the hospital painted the access ramp with the same yellow flat highway paint that was customarily used on streets, parking lots, and warehouse and factory floors and that the traction strips were not replaced for two or three days after the ramp had been repainted because it had been raining. They also conceded that no warning devices had been placed near the access ramp while it was being painted or before the traction strips were reinstalled.

One employee stated that he was familiar with non-skid paint, that flat paint was Aslicker@ than non-skid paint, and that using non-skid paint would have eliminated the need for the black traction strips. He also testified that the hospital could have used non-skid paint to paint the ramp before Ms. Winstead fell but had chosen to use the flat paint instead because there was still a supply

---

[5] During his closing argument, the Winsteads= lawyer told the jury that Athe first thing . . . [a careful reasonable business] would have done is that they would have used non-skid paint. It=s that simple.@ Later in his argument, the Winsteads= lawyer stated that the Athe act of negligence that caused this injury@ was that the hospital maintenance personnel left the ramp without strips and that Athe strips should have been put down, or it [the area] should have been blocked off at that time.@

of it on hand. Although the other maintenance employee was unfamiliar with the non-skid paint when Ms. Winstead fell, he stated that he assumed that painted concrete had less traction than unpainted concrete and that stepping on a painted slope when it was raining would be more slippery than stepping on an unpainted slope. This employee also testified, without objection, that Goodlark discontinued using the traction strips and began using non-skid paint after Ms. Winstead fell because the non-skid paint provided better traction over the entire surface of the access ramp and because the traction strips required too much maintenance.

Property owners and businesses must exercise reasonable care to protect their customers and guests from unreasonable risks of harm. *See Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn. 1984); *Jones v. Exxon Corp.*, 940 S.W.2d 69, 71 (Tenn. Ct. App. 1996). That duty normally includes maintaining the premises in a generally safe condition by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of the dangerous condition. *See Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996); *Eaton v. McClain*, 891 S.W.2d at 593-94. A condition will be considered dangerous if it is reasonably foreseeable that the condition will cause injury and that a reasonably prudent property owner would not maintain the premises in such a state. *See McCall v. Wilder*, 913 S.W.2d. 150, 153 (Tenn. 1995); *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992).

To succeed with a negligence claim, a plaintiff must establish the following elements of proof: (1) a duty of care owed by the defendant to the plaintiff, (2) conduct by the defendant breaching that duty, (3) an injury or loss to the plaintiff, (4) causation in fact, and (5) proximate or legal cause. *See McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991). If the plaintiff makes out a prima facie negligence claim, the burden of going forward with the evidence shifts to the defendant. After the burden shifts, the defendant must negate one or more of the essential elements of the plaintiff=s negligence claim.

The parties in this case do not dispute the existence and scope of a property owner=s duty of care. Like any other property owner, Goodlark was required to maintain its premises in a reasonably safe condition. There is likewise little dispute regarding injury, causation in fact, and legal causation. Ms. Winstead injured her knee when she fell on the access ramp and the condition of the access ramp was a cause in fact and legal cause of Ms. Winstead=s fall. Thus, the pivotal, and most hotly contested, issue at trial was whether Goodlark had maintained the access ramp in a manner that breached its duty of care.

The former hospital employees testified that concrete surfaces painted with flat paint are Aslicker@ than unpainted surfaces and that a sloping surface painted with flat paint has less traction than an unpainted sloping surface. From this evidence, a reasonable fact-finder could conclude that Goodlark=s maintenance personnel should have foreseen that persons could fall on the newly painted access ramp if rained upon before the traction strips were reinstalled. Because of the foreseeability of the injury, a reasonable fact-finder could also have concluded that the gravity of the possible injury outweighed the burden that would have been placed on the hospital had the hospital used non-skid paint, reinstalled the traction strips more quickly, or placed warnings around the access ramp until the maintenance personnel completed their work.

The Winsteads made out a prima facie negligence case. Accordingly, the burden shifted to Goodlark to convince the jury that its decision to use flat traffic paint was consistent with its duty of reasonable care. The sole witness offered by the hospital did not provide evidence that was so compelling that it would have required the jury to agree with the hospital=s assertion that it did not breach the duty it owed to persons entering and leaving the hospital by painting the access ramp with flat traffic paint. Accordingly, Goodlark is not entitled to a Tenn. R. Civ. P. 50.02 judgment in accordance with its motion for a directed verdict based on the theory that it maintained the access ramp properly.

## C.
### THE JURY=S ASSESSMENT OF FAULT

Finally, Goodlark asserts that it was entitled to a judgment notwithstanding the verdict because Ms. Winstead was at least fifty percent at fault for failing to exercise due care for her own safety by watching where she was walking. We likewise find this argument to be without merit.

The jury apportioned the fault between the parties by determining that Ms. Winstead was forty percent at fault and that Goodlark was sixty percent at fault. The jury=s allocation was approved by the trial court as thirteenth juror. Even if the trial court had disagreed with the jury=s allocation of fault, it could not have reallocated the fault. *See Turner v. Jordan*, 957 S.W.2d 815, 823-24 (Tenn. 1997). Like the trial court, we cannot reallocate fault on appeal from a jury verdict even though we may alter a trial court=s allocation of fault following a bench trial. *See Coln v. City of Savannah*, 966 S.W.2d at 44. Thus, we decline the invitation to alter the jury=s allocation of fault between Ms. Winstead and Goodlark.

We reach a similar conclusion with regard to Goodlark=s argument that Ms. Winstead was at least fifty percent at fault as a matter of law. That conclusion is not the only one supported by the evidence. It may very well be, as a matter of law, that Ms. Winstead should have been aware of the existence of the access ramp because it was painted bright yellow to differentiate it from the surrounding concrete sidewalk. However, the fact that the ramp was painted yellow did not, as a matter of law, put Ms. Winstead on notice that the ramp=s sloped sides might be more slippery when rained upon than the surrounding unpainted concrete or that the customary traction strips had been removed while the ramp was being repainted. Accordingly, Goodlark was not entitled to a Tenn. R. Civ. P. 50.02 judgment in accordance with its motion for a directed verdict on the ground that Ms. Winstead was, as a matter of law, at least fifty percent at fault for her injuries.

## III.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal to Goodlark Regional Medical Center, Inc. and its surety for which execution, if necessary, may issue.