IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

ROGER BROWN,

    Plaintiff-Appellant,

Vs.

CITY OF MEMPHIS,

    Defendant-Appellee.

C.A. No. 02A01-9803-CV-00069
Shelby Circuit No. 76743-7 T.D.

**FILED**

**October 22, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE ROBERT A. LANIER, JUDGE

Thomas K. McAlexander of Jackson
For Plaintiff

Robert L. J. Spence, Jr., City Attorney
Elbert Jefferson, Jr., Sr. Assistant City Attorney
For Defendant

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

Plaintiff, Roger Brown, appeals the order of the trial court granting summary judgment

to Defendant, City of Memphis.

The facts are not disputed. This suit stems from an on-the-job injury suffered by Brown

on May 12, 1995. The City employed Brown as a backhoe operator at the M. C. Stiles Sewage Treatment Plant. One of Brown's duties was to move a sled back and forth across a sludge pond. Originally, a crane was used to move the sled; however, at some time prior to the accident the crane had broken down. The employees at the sewage treatment plant were forced to improvise by using bulldozers and a pulley arrangement. Brown operated one of these bulldozers with a large pulley attached to its side. A cable ran through this pulley and across a sludge pond to another bulldozer located on the opposite side. The sled moved between the bulldozers and across the pond by means of the cable.

While operating the bulldozer on May 12, 1995, the cable became jammed in the pulley system. In an attempt to free the cable, Brown climbed down from the bulldozer and stood in the sludge pond. After several hours of trying to free the cable, another employee attempted to break the cable free with the bulldozer on the opposite side of the pond. When the employee started the bulldozer and began the attempt, the cable jerked and severely lacerated Brown's leg. To make matters worse, Brown was standing in raw sewage when the injury occurred. The raw sewage seeped into Brown's wound causing severe complications and worsening the injury.

The City is not covered by the Tennessee Workers' Compensation Act.[1] The City does have an "on the job injury" (OJI) program designed to compensate injured employees for lost wages and medical bills. Pursuant to the OJI, the City paid Brown in excess of $150,000 for lost wages and medical bills as a result of his injury.

On March 12, 1996, Brown filed suit against the City under the Governmental Tort Liability Act (GTLA).[2] Brown alleged that the City was negligent in operation of the M. C. Stiles Sewage Treatment Plant, and that this negligence caused Brown's injuries. The City filed a Motion for Summary Judgment requesting the trial court to determine that Brown would not be entitled to damages because the payment of $150,000 under the OJI program exceeded the

---

[1]T.C.A. § 50-6-106(5) allows counties and municipal corporations to "opt-in" to the Workers' Compensation statute. However, the City decided against filing the required written acceptance, and instead began the OJI program of it's own design.

[2]In a derivative action, Brown's wife, Elizabeth, filed suit against the City for loss of consortium. After the trial judge granted the City's Motion for Summary Judgment, Elizabeth Brown's suit went to trial. The judge found that the City had provided Brown with unsafe machinery with which to complete his work, and that the City knew that the machinery was unsafe. Therefore, the trial court found the City negligent and awarded Mrs. Brown $25,000 as damages for loss of consortium.

$130,000 limit under the GTLA. The trial judge granted the City's motion, and dismissed Brown's action. Brown appeals, and the issue presented for review is whether the trial court erred in granting summary judgment to the City.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. **Id.** In **Byrd v. Hall**, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

**Id.** at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. **Carvell v. Bottoms**, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. **Bain**, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. **Warren v. Estate of Kirk**, 954 S.W.2d 722, 723 (Tenn. 1997).

As previously noted, the facts are not disputed. Although the provisions of the OJI program are not in evidence, the parties apparently stipulated to its existence as shown in the appendix to appellee's brief. They further stipulated that Brown was paid in excess of $150,000.00 pursuant to the program. Under this scenario, we must determine from the provisions of the GTLA and the OJI program whether the city is entitled to judgment as a matter of law.

In 1973, the Tennessee state legislature passed the GTLA. Prior to the passage of the GTLA, the doctrine of

3

sovereign immunity "protected the state and its political subdivisions from tort liability."[3] *Cruse v. City of Columbia*, 922 S.W.2d 492, 495 (Tenn. 1996). "In the performance of its governmental functions, the municipality is an arm or agent of the State and enjoys the same immunity under the constitutional provision." *City of Lavergne v. Southern Silver, Inc.*, 872 S.W.2d 687, 690 (Tenn. App. 1993) (citing *Scates v. Board of Comm'rs of Union City*, 196 Tenn. 274, 265 S.W.2d 563 (1954)). The GTLA is premised explicitly on the absolute immunity of governmental entities. *Id.* The codification of this general immunity states:

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

T.C.A. § 29-20-201(a) (1980 & 1997 Supp.). The GTLA codified the long held doctrine of sovereign immunity, yet removed governmental immunity in a few limited circumstances. *Cruse,* 922 S.W.2d at 496.

The statute provides, *inter alia*, that "[i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment. . . ." T.C.A. § 29-20-205 (1980). Brown's suit fits this category and is properly filed pursuant to the GTLA.

While allowing suits against local governments, the GTLA does limit the amount of recovery. At present, a plaintiff suing in tort for the negligence of city employees under the GTLA may only recover a maximum of $130,000. T.C.A. § 29-20-311 (1980) provides:

> **29-20-311.    Judgment over limits of insurance policy prohibited.** - No judgment or award rendered against a governmental entity may exceed the minimum amounts of insurance coverage for death, bodily injury and property damage liability specified in § 29-20-403[4], unless such governmental entity has secured insurance coverage in excess of said minimum requirements, in which event the judgment or award may not exceed the applicable limits provided in the insurance policy.

The City chose not to operate under the Workers' Compensation law as allowed under § 50-6-106(5) of the statute. The City did establish an OJI program. The OJI program covers all permanent, full-time employees and provides the following benefits:

### III. PROCEDURES

A. Payments

1. Medical Expense

---

[3]The existence of sovereign immunity is established in Article 1, Section 17 of the Tennessee Constitution: "Suits may be brought against the State in such a manner and in such courts as the Legislature may by law direct."

[4] T.C.A. § 29-20-403 (1998 Supp.) sets the minimum amount of insurance coverage at $130,000.00, and it is implicitly stipulated that there is no other applicable insurance.

a. The City will pay necessary medical expenses, including physician fees, hospital bills, and certain other ancillary expenses when an OJI claim is accepted by the City. This is subject to an overall maximum of $50,000 per injury or illness. Amounts can be increased only by action of the City Council.

b. Medical expense payments only are continued for a period of up to 3 years in cases of line-of-duty disability retirement, or eligibility for total and permanent disability benefits under Social Security, or the employee receives benefits under the Long Term Disability Income Plan.

2. Lost-Time

Full salary will be paid for a maximum period of 6 months (180 calendar days) to employees covered by the On-The-Job Injury Program for as long as there is medical documentation from the physician of record that it is medically necessary for the employee to remain off work due to the on-the-job injury or illness. No employee may be off a City job longer than 12 consecutive months from the date the employee is unable to work due to disability from illness and/or injury. . . .

If, after receiving OJI leave with pay for six months, the employee is medically unable to perform the duties required, the employee must exercise one of the options provided for. (These provisions are not pertinent to the issues before the Court.)

After viewing the OJI program as a whole, and in relation to the Workers' Compensation Act, we find that the program established by the City was intended not as compensation for the negligence of fellow employees but as a fringe benefit for any type of work-related accident. While the payments made under the OJI program are similar to payments made under the Workers' Compensation statute, one important difference exits between the two. The Workers' Compensation statute explicitly excludes all other claims against employers. *See* T.C.A. § 50-6-108 (a). The OJI program has no such exclusivity provision.

The GTLA was passed not only to codify the common law doctrine of sovereign immunity but to allow for exceptions to it. *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). Plaintiffs, such as Brown, injured by the negligence of employees of municipalities were the intended beneficiaries of the legislation. *See* T.C.A. § 29-20-205 (1980). On the other hand, the OJI program outlined in the employee handbook did not intend to compensate Brown or other injured workers for the negligence of the City or employees.

The GTLA was enacted to allow plaintiffs to sue city governments and obtain judgments up to $130,000 for actions in tort. The OJI program was initiated by the City as a fringe benefit to employees and provides for payment to employees without regard to tort liability of the employer. The program is somewhat analogous to the workers' compensation law. The program is also akin to a type of insurance plan paying immediate benefits for medical expenses and lost income.

The program provides the city with subrogation rights if benefits are paid for injuries caused by third parties.

5

Significantly, the program does not mention subrogation or credit if there is a GTLA claim against the City. As noted, the program limits the City's liability for medical expenses to $50,000.00 and limits the City's liability for the employee's lost salary to six months.

The construction of municipal ordinances and resolutions is governed by the same rules that control construction of the state statutes. *Logins v. Lightner*, 897 S.W.2d 698, 702 (Tenn. App. 1994); *Tennessee Manufactured Housing Ass'n v. Metropolitan Gov't of Nashville*, 798 S.W.2d 254, 260 (Tenn. App. 1990). The primary purpose of statutory construction is to ascertain and give effect to the intention or purpose of legislation as expressed in the legislation. *Westinghouse Elec. Corp. v. King*, 678 S.W.2d 19, 23 (Tenn. 1984), *appeal dismissed* 105 S.Ct. 1830, 470 U.S. 1075, 85 L.Ed. 2d 131 (1985). Likewise, the primary rule of contract construction is to determine the intent of the parties from the four corners of the contract. *A. G. Rogus v. First Tennessee Bank Nat'l Ass'n*, 738 S.W.2d 635, 637 (Tenn. App. 1987). Legislation must be construed or interpreted with reference to its intended purpose. *White v. Cain*, 178 Tenn. 469, 159 S.W.2d 92 (1942). "The legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used when read in the context of the entire statute and without any forced or subtle construction to limit or extend the import of the language." *City of Caryville v. Campbell County*, 660 S.W.2d 510, 512 (Tenn. App. 1983); *Azbill v. Azbill*, 661 S.W.2d 682, 686 (Tenn. 1983).

Considering the language used in the OJI and the intended purpose of the program, the City intended that the medical benefits and salary as limited in the program would be a separate and distinct fringe benefit to the employee subject only to the right of subrogation should the injury resulting in the benefit be caused by the actions of a third party. Payments made in excess of the benefits provided for in the program should be considered as advance payments toward any alleged liability for which the City might ultimately be held liable. We believe the reasoning of this Court in *Howard v. Abernathy*, 751 S.W.2d 432 (Tenn. App. 1988) is applicable to the case at bar. In *Howard*, plaintiff sustained personal injuries in a automobile collision with the defendant. Prior to suit being filed for his alleged personal injury, the defendant's liability insurer paid the plaintiff $1,407.00, the amount of plaintiff's incurred medical bills. When suit was filed, the plaintiff presented proof of medical expenses as part of his claim for damages. A verdict was returned in favor of the plaintiff for $7,500.00 and judgment entered thereon. The defendant filed a motion to reduce the amount of the judgment by the amount previously paid in advance for the medical expenses. The trial court denied the motion, and this Court reversed the trial court, granted credit for the amount previously paid, and reduced the judgment accordingly. In *Howard*, the Court noted that the amount received by the plaintiff for his medical expenses was not a loan or any other transaction that created an obligation on his part. The Court stated: "The money received

6

by plaintiff was an advance payment or partial satisfaction of the claim of the plaintiff." *Id.*, at 434-35. The Court noted that the making of advance payments was a humanitarian practice that should be encouraged and commended. We agree with observation of the *Howard* court. We feel that the same circumstances exist in the case at bar. In the instant case, the City, without any obligation, made the payments in excess of those required by the OJI program and should be allowed to claim credit for such payments in any proceeding to establish legal liability on the part of the City.

Since the record indicates that the amount for which the City should be given credit is less than the maximum liability of the City under the GTLA, summary judgment was inappropriate.

The judgment of the trial court is reversed, and the case is remanded to the trial court for such further proceedings as may be necessary consistent with this opinion. Costs of the appeal are assessed against the appellee.

_____

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____

**ALAN E. HIGHERS, JUDGE**

_____

**DAVID R. FARMER, JUDGE**