IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
_____

**RANDALL GRAHAM and**
**CHARLES J. FYKE,**

Plaintiffs-Appellants,

Vs.

**LORAINE EDMONDSON,**

Defendant-Appellee.

**FILED**

**July 12, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

Williamson Chancery No. 24797
C.A. No. 01a01-9809-CH-00482

_____

FROM THE WILLIAMSON COUNTY CHANCERY COURT
THE HONORABLE CORNELIA A. CLARK, JUDGE

David H. King; King, Turnbow & Brisby of Franklin
For Appellants

William Carter Conway of Franklin
For Appellee

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This is an action to enforce restrictive covenants against a landowner.

Plaintiffs/appellants, Randall Graham and Charles Fyke (Plaintiffs), appeal the order of the trial

court granting summary judgment to defendant/appellee, Loraine Edmondson (Edmondson).

Plaintiffs in this action are homeowners in the upscale neighborhood of Bluff Road Acres in Brentwood. They allege that Edmondson has a mobile home and operates businesses on her property in violation of restrictive covenants placed on the neighborhood.

The facts are undisputed. In March 1978, Fitts and Johnson Development Company (Fitts & Johnson) acquired title to a large tract of land which eventually became Bluff Road Acres. On April 7, 1978, Fitts & Johnson sold two tracts of land to Hasty Construction Company (Hasty). On September 13, 1978, Fitts & Johnson executed restrictive covenants, which they recorded in the Register's Office of Williamson County. The restrictions purported to cover all of Bluff Road Acres including the two tracts previously sold to Hasty and in pertinent part state:

RESTRICTIONS FOR BLUFF ROAD ACRES

*          *          *

Whereas, the undersigned developers of the property known as Bluff Road Acres, desire to place restrictive covenants which shall be applicable to all the lots shown on the recorded plat of said subdivision and binding upon all present and future owners for the period hereinafter. These restrictions only govern property appearing on the west side of Owl Creek. Property on the east side of Owl Creek remains unrestricted.

*          *          *

2. No trailer, basement house, tent, garage, barns, or other outbuilding shall be erected or used as either a temporary or permanent residence.

*          *          *

8. No school buses, trailer trucks, dump trucks, mobile homes, etc., are to be parked or stored on any lot.

*          *          *

12. No commercial activities permitted to be conducted on the west side of Owl Creek. . . .

13. If the parties hereto or any of them or their heirs or assigns shall violate or attempt to violate any of the covenants or restrictions herein before May 10, 2003, it shall be lawful for any other person or persons owning any other lot in said development to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenant or restrictions for such violation.

There is no evidence that Hasty agreed to or acquiesced in the covenants placed on the two tracts it owned.

2

On November 17, 1978, some two months after Fitts & Johnson filed the restrictive covenants covering Bluff Road Acres, Hasty sold part of the land in question to Mr. and Mrs. Thomas. Edmondson and her husband acquired the property on October 28, 1981 from the Thomases. In 1991, after Edmondson and her husband divorced, the land in question was quitclaimed to her. Edmondson subsequently installed a mobile home on her property, expanded a barn, held rodeos, and began a beauty shop on her property.

Plaintiffs, on behalf of twenty-one (21) homeowners in Bluff Road Acres, filed suit against Edmondson asserting that she was in violation of the restrictive covenants and seeking injunctive relief by removal of her mobile home and removal of a garage located on her property. The complaint also seeks to enjoin Edmondson from holding rodeos and from operating a beauty shop. Edmondson answered the complaint and filed a motion for summary judgment. After a hearing on the motion, the trial court entered an order granting Edmondson summary judgment which states in pertinent part:

> Plaintiffs in this lawsuit allege that defendant is currently in the process of erecting a trailer on the lot owned by her in the subdivision, and that this action violates the above-referenced restrictive covenant. Defendant claims her property is not subject to the restrictive covenants because it was deeded to her predecessor in title prior to the placement of the restrictions on the property.
>
> Defendant's position is correct. Under Tennessee law, at least in the absence of an expressed contrary intention, a covenant running with the land must be confined to the property as it existed at the time of the covenant. . . .
>
> Although courts recognize the validity of restrictive covenants, they are not favored and will not be extended by implication. (citation omitted) Since defendant's property is not burdened by restrictions either directly in the chain of title or by any other document, recorded or otherwise, this court cannot impose such restrictions upon her land. . . .
>
> It is therefore ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment shall be, and is hereby, granted. The action is dismissed. . . .

Plaintiffs timely appealed the trial court's order and ask this Court to determine whether summary judgment was appropriate.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the

3

burden of demonstrating that no genuine issue of material fact exists. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. ***Id.*** In ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 [now Rule 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

***Id.*** at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. ***Bain***, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is ***de novo*** on the record before this Court. ***Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn. 1997).

Plaintiffs first assert that the trial court erred in granting Edmondson's motion for summary judgment because a genuine issue exists as to Edmondson's knowledge of the restrictive covenants. Plaintiffs cite two cases from this court which deal with notice of restrictive covenants not found in the chain of title. In ***Stracener v. Bailey***, 737 S.W.2d 536 (Tenn. App. 1986), a developer purchased a parcel of property which had been designated on a plat as a park. When the developer attempted to develop this land, other owners in the subdivision filed suit to enjoin the development. This Court held that by designating the area on the plat as a park and selling lots according to the plat, the owner of the subdivision created a restriction on the use of the property. The only question then for the Court to decide was whether the developer, as the purchaser of the property, was bound by the restriction. In holding that the restriction was applicable to the property, the Court noted that a title search of the developer's chain of title would have revealed this restriction. This case is distinguishable from the case at bar, because at the time the restrictive covenant was placed on the park property, the park property was owned by the entity placing the restriction on the property. In the case at bar, the entity establishing the restrictive covenants ***did not*** own the property which is now owned by Edmondson.

In ***KLN Assoc. v. Metro Dev. & Housing Agency***, 797 S.W.2d 898 (Tenn. App. 1990), a developer

filed a declaratory judgment action claiming that its proposed office development should not be subject to an urban renewal plan not found in its chain of title. The *KLN* Court held in part that "[o]therwise valid restrictions on property are binding even when they are not in the chain of title if the owner had actual knowledge of the restrictions when it acquired the property." *Id.* at 904.

*KLN* deals solely with the power of the government at both the state and local levels to exercise its police power to impose restrictions on private property. *Id.* at 901. Of course, such power is firmly established under prior case law and is limited only by the state and federal constitutions. Thus, *KLN* is easily distinguishable from the present case.

While we agree with the holding of the *Stracener* and *KLN* Courts, we do not believe that they are applicable to the facts in the case before us. Instead, the pertinent issue in the present case deals with the power of a developer to bind property it *does not own* by filing a subdivision plat which includes restrictive covenants.

This Court has previously held:

> If it is a covenant running with the land, at least in the absence of an expressed contrary intention, *its operation must be confined to the property as it existed at the time of the covenant.* And the rule of strict construction applies when an attempt is made to apply the covenant to other lands.

*Southern Advertising Co. v. Sherman*, 308 S.W.2d 491, 493, 43 Tenn. App. 323, 326 (1957) (emphasis added).

Further, the Supreme Court has discussed at what point in time a restrictive covenant binds property:

> The present record reveals no reason why the restrictive covenants should not be applied according to their terms against buyers of lots who personally agreed to them or whose purchases *occurred after the recordation of any particular set of covenants.* We have already stated that no set of covenants should be given any general retroactive effect.

*East Sevier County Util. Dist. v. Wachovia Bank & Trust Co.*, 570 S.W.2d 850, 853 (Tenn. 1978) (emphasis added).

It is clear from the facts in this case that Fitts & Johnson sold the tracts of land in question over five months before recording the restrictive covenants for Bluff Road Acres. It is equally clear that the law applies restrictive covenants to land "as it existed at the time . . . the covenant" was recorded. *Sherman*, 308 S.W.2d at 493, 43 Tenn. App. at 326. Thus, Edmondson's property is not burdened by the restrictions which apply to all other tracts comprising Bluff Road Acres. Further, we agree with the trial court that whether Edmondson had knowledge of restrictions, or even for some time believed the restrictions applied to her property, is not pertinent.

The order granting summary judgment to Edmondson is affirmed, and the case is remanded for such further

proceedings as are necessary. Costs of appeal are assessed to Appellants.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**DAVID R. FARMER, JUDGE**


_____
**HOLLY KIRBY LILLARD, JUDGE**