# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 17, 2004 Session

## DONNA MULHERN v. PULTE HOMES

### A Direct Appeal from the Circuit Court for Shelby County
### No. CT-007232-02    The Honorable D'Army Bailey, Judge

---

### No. W2004-01488-COA-R3-CV - Filed December 28, 2004

---

Appellant/Homeowner appeals from the trial court's grant of summary judgment in favor of Appellee/Homebuilder. Appellant/Homeowner sued Appellee/Homebuilder on theories of faulty installation and construction of Appellant/Homeowner's roof and under the Tennessee Consumer Protection Act. The trial court found that Appellant/Homeowner's claims were time barred under both T.C.A. §28-3-202 and T.C.A. §47-18-110. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Malcolm L. McCune and Michael D. Hornback of Nashville for Appellant, Donna Mulhern

Carol M. Hayden of Memphis for Appellee, Pulte Homes

### OPINION

On or about November 4, 1997, Donna Mulhern ("Plaintiff," or "Appellant") and her husband, Raymond K. Mulhern, moved into their new home located at 3087 Belgrave Drive in Memphis, Tennessee (the "House").[1] The House was a spec house, which had been shown to the Mulherns by an agent representing Radnor Homes, a predecessor of Pulte Homes ("Pulte," "Defendant," or "Appellee"). The roof had been constructed and installed before the Mulherns moved into the House.

In May 1998, the Mulherns noticed water leaks in the master bedroom and another bedroom. One leak was located in the bedroom closet and resulted in water marks on the wall, crumbling drywall, and molded carpet around the area. Mrs. Mulhern contacted Pulte and was told to put the problem in writing. Mrs. Mulhern wrote a description of the leaks and faxed it to Pulte. Approximately two weeks after Mrs. Mulhern informed Pulte of the leaks, Pulte made its first

---

[1] Mr. Mulhern is a joint owner of the House but was not a party to the original suit.

attempt to repair the roof. Pulte, through its agent Janette Odom, allegedly promised to replace the damaged carpet but failed to do so.

After the next rain, Mrs. Mulhern noticed the roof leaking in the same places. Once again, she faxed a request for repair to Pulte. Pulte sent Mrs. Odom's husband to fix the leaks. At that time, Mr. Odom discovered that some shingles were loose on the roof and attempted to repair them.

Although the roof leaks stopped, on February 4, 2000, Mrs. Mulhern wrote a letter to Pulte, which reads, in relevant part, as follows:

> Several shingles have blown off the roof this morning and it looks like several more are on the way down–there is bare wood showing. The area is located at the back of the house over the master bedroom. I've called Janet Odom & she is aware of the problem–the roof has been a continuing problem. We've had shingles come off on other areas as well....

Upon receipt of this letter, Mrs. Odom informed Mrs. Mulhern that the House was out of warranty and that Pulte would perform no further repairs to the roof.

Mr. Mulhern then wrote to Pulte's corporate offices regarding the problems with the roof. Pulte hired Heath Garner to inspect the roof. Mr. Garner sent the Mulherns a copy of his letter and findings, which stated that any lost shingles were not the result of construction but were due to inclement weather. According to Mrs. Mulhern's deposition, Mr. Garner specifically stated as follows concerning the roof:

> Q. And what did Mr. Garner say about the roof, if you know?
>
> A. In the letter it said that there was nothing that he could see that was wrong with the roof and that the reason why the shingles were sliding off the roof was because of inclement weather.

When asked whether there had been any inclement weather, which might have led to the shingles falling off, Mrs. Mulhern answered "No." Following Mr. Garner's report, the Mulherns hired a handyman who replaced some shingles at a cost to them of approximately $100.00.

A few months later, more shingles, over the master bedroom and the garage, began to slide off the roof. At that point, Mrs. Mulhern decided to call a home inspector. The home inspector recommended that a roofer be employed to inspect the roof. Mrs. Mulhern hired Rob Jolly. Mr. Jolly inspected the roof on or about May 9, 2001. According to Mrs. Mulhern's deposition, Mr. Jolly made the following findings:

> That [the] roof was improperly installed. They [the roofers] had used a pneumatic gun and blew [sic] the nails through the shingles. Instead of attaching them [the shingles] to the roof, they blew the nails

through the shingles, and they [the shingles] were nailed too high, and there were areas where there was no felt paper under those shingles and that eventually the whole roof would probably slide off, you know, piece by piece.

The Mulherns were referred to J.D. Roofing. J.D. Roofing estimated that the necessary roof repairs would cost approximately $10,960.00.

On or about May 1 2002, Mrs. Mulhern filed suit against Pulte, alleging negligence in the construction of her roof and violation of the Tennessee Consumer Protection Act due to fraud and concealment of the defective construction and installation of the roof. On January 8, 2004, Pulte filed a Motion for Summary Judgment along with a Statement of Material Facts in support thereof. On January 29, 2004, Mrs. Mulhern filed a Response to the Motion for Summary Judgment along with the Affidavit of Rob Jolly in support thereof. The Motion for Summary Judgment was heard on April 2, 2004. Pulte's Motion for Summary Judgment was granted by Order of April 23, 2004.

Mrs. Mulhern appeals and raises one issue for review as stated in her brief: "Whether the trial court erred in granting summary judgment against Appellant based upon the statute of limitations found in Tenn. Code Ann. §28-3-202 and Tenn. Code Ann. §47-18-110."

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id*. at 210-11 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn .1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of

the trial court's grant of summary judgment is *de novo* on the record before this Court. ***See Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn.1997).

The question of whether summary judgment was proper here rests on the trial court's application of T.C.A. §28-3-202 and T.C.A. §47-18-110. We will address each of these statutes in turn.

## Construction Defect T.C.A. §28-3-202

T.C.A. §28-3-202 (2000) limits suits based upon alleged construction defects as follows:

> All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after substantial completion of such an improvement.

Here, the House was substantially completed on October 30, 1997. Under T.C.A. § 28-3-202, Mrs. Mulhern would have had until October 30, 2001 to file suit. However, there are two statutory exceptions to this four year limit. The first is found at T.C.A. § 28-3-203 (2000), which reads, in pertinent part, as follows:

> **Injury during fourth year after completion–Limitation of action.–**(a) Notwithstanding the provisions of § 28-3-202, in the case of such an injury to property or person or such injury causing wrongful death, which injury **occurred** during the fourth year after such substantial completion, an action in court to recover damages for such injury or wrongful death shall be brought within one (1) year after the date on which such injury occurred....

(Emphasis added).

Mrs. Mulhern asserts that her claims fall within this exception because the damage (i.e. sliding shingles) was not "discovered and incurred" until May 9, 2001. May 9, 2001 is the date that Mr. Jolly informed the Mulherns that, in his opinion, the sliding shingles were the result of defective workmanship. As set out above, the T.C.A. § 28-3-203 exception is based upon the injury *occurring* during the fourth year after substantial completion. Here, Mrs. Mulhern's February 4, 2000 letter, see *supra*, indicates that this damage was already occurring in 2000, if not as early as 1998 as indicated by Mr. Odom's repairing some sections of shingles at that point. Consequently, the damage here did not occur in the fourth year after substantial completion (i.e. 2001). Therefore, this exception is not applicable.

The second exception to the four year limit is found at T.C.A. § 28-3-205(b) (2000), which reads, in relevant part, as follows:

> The limitation hereby provided shall not be available as a defense to any person who shall have been guilty of fraud in performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying, in connection with such an improvement, or to any person who shall wrongfully conceal any such cause of action.

Mrs. Mulhern asserts that Pulte's agent, Mr. Heath Garner, fraudulently concealed the faulty workmanship on the roof when Pulte sent him to inspect the House. We disagree. The record before us indicates that at least two people inspected the roof of the House. The first was Mr. Garner who opined that any sliding shingles were the result of inclement weather and not the result of faulty workmanship. On the other hand, the Mulherns' inspector, Mr. Jolly, opined that the shingles had been improperly installed. Even if we concede that Mr. Garner's opinion was incorrect, given the record before us, there is nothing to indicate that his mistake was intentional or that he knowingly concealed information from the Mulherns. Consequently, we cannot say that Pulte, through its agent, engaged in fraud or concealment such that the above exception would apply.

### Tennessee Consumer Protection Act T.C.A. §47-18-110

Mrs. Mulhern next contends that the trial court erred in concluding that her claim was barred under the Tennessee Consumer Protection Act. T.C.A. §47-18-110 (Supp. 2004) reads, in relevant part, as follows:

> Any action commenced pursuant to [the Tennessee Consumer Protection Act] shall be brought within one (1) year from a person's **discovery** of the unlawful act or practice....

(Emphasis added).

Again, Mrs. Mulhern's letter of February 4, 2000 indicates that the Mulherns had discovered the damage to their roof at least by that date. This suit was not filed until May 1, 2002. Consequently,

the trial court did not err in holding that Mrs. Mulhern's Tennessee Consumer Protection claim was barred by the one year statute of limitations.

For the foregoing reasons we affirm the Order of the trial court granting summary judgment in favor of Pulte. Costs of this appeal are assessed against the Appellant, Donna Mulhern, and her surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.