IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 17, 2008 Session

**TOWN OF OAKLAND, A Municipal Corporation of the State of Tennessee
v.
TOWN OF SOMERVILLE, A Municipal Corporation of the State of
Tennessee, in its Own Capacity, and by and Through ROBERT MORRIS in
his Official Capacity as Mayor of Somerville, and the Following Members of
the Board of Alderman in Their Official Capacity: LAND MIDDLECOFF,
JOHN DAVID DOUGLAS, NAN GREEN, ALTON FEATHERS, CARLTON
MORRIS and DOUG MASON; WILLIAM RUSSELL "RUSTY"
HYNEMAN, Individually and d/b/a HYNEMAN DEVELOPMENT
COMPANY; WRH ENTERPRISES, LLC; and WRH PROPERTIES, INC.**

An Appeal from the Chancery Court for Fayette County
No. 12928     L. Terry Lafferty, Sr. Judge

---

**No. W2007-02264-COA-R3-CV - Filed December 30, 2008**

---

This is the second appeal in an annexation case involving two municipalities. The plaintiff smaller municipality passed an ordinance annexing adjoining property. The annexation was to be effective ninety days later. The annexed property also adjoined the defendant larger municipality. After the passage of the plaintiff's annexation ordinance, but before its effective date, the defendant municipality passed an ordinance annexing the same property. The plaintiff then filed a declaratory judgment action, asking the court to find that the defendant's annexation was invalid because it attempted to annex property that the plaintiff had already annexed. The trial court granted the defendant's motion to dismiss and the plaintiff municipality appealed. In the first appeal, we reversed and the case was remanded to the trial court. The defendant then filed a second motion to dismiss, arguing, *inter alia*, that its greater population gave it annexation priority over the plaintiff under Tennessee Code Annotated § 6-51-110. The trial court denied the defendant's motion, finding that the plaintiff's annexation of the disputed property took place upon the passage of the ordinance after its final reading, not the effective date of the ordinance. Consequently, it found, the statute giving annexation priority to the larger municipality was not applicable because the defendant larger municipality did not initiate annexation proceedings until after the plaintiff had already annexed the property. The defendant now appeals. We reverse, finding that the effective date of the annexation, not the date of final passage, is the operative date by which a municipality with a larger population must initiate annexation proceedings in order to take advantage of its statutory priority.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed and
Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and WALTER C. KURTZ, S.J., joined.

J. Kevin Walsh, Memphis, Tennessee, for the Defendants/Appellants, Town of Somerville, *et al.*

Richard J. Myers and Tara M. Ryan, Memphis, Tennessee, for the Plaintiff/Appellee, Town of Oakland

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

This is the latest installment of the ongoing dispute between two rival municipalities tussling over the annexation of apparently prize property situated between them. The facts in this case are set forth more fully in our Opinion in the previous appeal. *Oakland v. Somerville*, No. W2002-02301-COA-R3-CV, 2003 WL 22309498 (Tenn. Ct. App. Oct. 7, 2003). We briefly recount the facts pertinent to this second appeal.

The two municipalities, Plaintiff/Appellee town of Oakland ("Oakland") and Defendant/Appellant town of Somerville ("Somerville") are both municipalities located in Fayette County, Tennessee. At all times relevant to this case, Somerville has had the larger population of the two.

Oakland is located to the west of Somerville. Oakland alleges that, in the spring of 1999, the mayors of Oakland and Somerville entered into an oral agreement on the boundary separating the annexation reserve areas for Oakland and Somerville, respectively. The alleged agreement prohibited either municipality from annexing property located in the other's annexation reserve area.

This appeal involves approximately 315 acres of land owned by developer William Russell "Rusty" Hyneman[1] ("Hyneman Property"). The Hyneman Property was within Oakland's alleged annexation reserve area. On July 8, 1999, Hyneman petitioned Oakland to annex the Hyneman Property into Oakland's corporate limits.

On September 30, 1999, Oakland passed Ordinance No. 1-9-99 ("Oakland Ordinance") on final reading, annexing property that included the Hyneman Property. The Oakland Ordinance stated that it would be "effective ninety days from and after its passage," *i.e.*, after December 29, 1999.

On October 11, 1999, eleven days after the passage of the Oakland Ordinance but prior to its effective date, Somerville adopted Ordinance No. 99-18 ("Somerville Ordinance") on first

---

[1] The ownership was through Hyneman's development companies, WRH Properties, Inc. and WRH Enterprises, LLC.

reading, also seeking to annex land that included the Hyneman Property.[2] On October 12, 1999, Somerville sent a notice to Oakland, informing Oakland that Somerville had initiated annexation proceedings on the Hyneman Property. Somerville's notice to Oakland claimed that, because Somerville was the larger of the two municipalities, Somerville had priority to annex the property pursuant to Tennessee Code Annotated §§ 6-51-102 and 110(b). The Somerville notice asserted that, under the statutes, Oakland was required to hold its annexation proceedings in abeyance pending the outcome of Somerville's annexation proceedings on the Hyneman property.

On October 28, 1999, Somerville passed the Somerville Ordinance on final reading. The Somerville Ordinance stated that it was to become effective ninety days from its final adoption, which would fall on January 26, 2000, well after the purported effective date of the Oakland Ordinance.

On December 21, 1999, Hyneman filed a *quo warranto* action against Somerville challenging the Somerville Ordinance as unreasonable. Approximately nine months later, Hyneman reached an agreement with Somerville and nonsuited his complaint.

On August 6, 2001, Oakland filed this lawsuit in the trial court below, seeking declaratory judgment and damages for breach of contract, naming Somerville, its mayor and alderman, and Hyneman as defendants. Oakland alleged that, when Somerville passed the Somerville Ordinance, Somerville had no statutory authority to annex the Hyneman Property because Oakland had already annexed the Hyneman Property by passing the Oakland Ordinance. Oakland also alleged that Somerville had agreed not to annex property in the area of the Hyneman Property, and that consequently Somerville should be estopped from claiming the statutory annexation priority set forth in Tennessee Code Annotated § 6-51-110. Finally, Oakland's lawsuit alleged that, by annexing the Hyneman Property, Somerville breached its contract with Oakland not to annex property in Oakland's annexation reserve area, causing damages to Oakland.[3]

In response, Somerville filed a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure. Somerville argued, *inter* alia, that, because Oakland did not timely file a *quo warranto* suit challenging the annexation, Oakland did not have standing to challenge the Somerville Ordinance under the Declaratory Judgment Act.

The trial court granted Somerville's motion to dismiss. It essentially found that a *quo warranto* action was the exclusive remedy available to Oakland, and that Oakland had filed its lawsuit beyond the ninety-day deadline for filing a *quo warranto* action. Consequently, it

---

[2]Both the Oakland and Somerville Ordinances annexed property in addition to the Hyneman Property, but the Hyneman Property is the only property that both ordinances sought to annex.

[3]Hyneman had purportedly committed to Oakland to contribute substantial monies for the construction of sewage treatment facilities to serve the annexed area, which Hyneman refused to contribute after passage of the Somerville Ordinance. Oakland's claim for damages against Hyneman stemmed from his alleged refusal to pay these monies. Oakland's claims against Hyneman were later nonsuited.

concluded, Oakland was prohibited from challenging the Somerville Ordinance under the Declaratory Judgment Act.

Oakland appealed the trial court's dismissal of its lawsuit. On appeal, this Court reversed the trial court, finding that Oakland "was authorized to maintain [its] declaratory judgment action challenging the validity of the Somerville annexation ordinance."[4] *Oakland*, 2003 WL 22309498, at *8. The cause was remanded to the trial court for further proceedings.

On October 19, 2004, on remand, Somerville filed a second motion to dismiss for failure to state a claim upon which relief can be granted. Tenn. R. Civ. P. 12.02(6). In this motion, Somerville asserted that there was no oral agreement between the mayors of Oakland and Somerville to restrict annexation, and even if there were, it would be *ultra vires*, void *ab initio*, and unenforceable under the Statute of Frauds.[5] Somerville argued that it had statutory priority over Oakland to annex the Hyneman Property, pursuant to Tennessee Code Annotated § 6-51-110. In response to Oakland's assertion that Somerville was estopped from claiming such priority based on the alleged agreement between the parties to limit annexation, Somerville maintained that the doctrine of estoppel was not applicable because there was no such agreement on annexation. Finally, Somerville argued that Oakland's claims should be barred by the doctrine of laches because Oakland waited nearly two years after the passage of the Somerville Ordinance to file its lawsuit. Somerville insisted that there was no reason for Oakland's delay, and that Somerville was prejudiced because, in the interim, Somerville had spent considerable monies extending municipal services to the Hyneman Property.

On October 12, 2005, the trial court denied Somerville's second motion to dismiss. In its order denying the motion, the trial court addressed the two issues characterized as critical to Somerville's motion, namely, (1) the issue of statutory priority to annex the Hyneman Property and (2) the alleged agreement between the mayors to limit annexation. It analyzed at some length the case relied upon by Somerville, *City of Gallatin v. City of Hendersonville*, 510 S.W.2d 507 (Tenn. 1974), and the case relied upon by Oakland, *Jefferson County v. City of Morristown*, No. 03A01-9810-CH-00331, 1999 WL 817519 (Tenn. Ct. App. Oct. 13, 1999), ultimately deciding that *Jefferson County* was controlling. The trial court found that Oakland annexed the Hyneman Property when it passed the Oakland Ordinance on final reading on September 30, 1999, and that as a result, Somerville did not act in time to take advantage of the statutory priority in Tennessee Code Annotated § 6-51-110. The trial court expressed "serious doubts" about the validity of any agreement between the mayors of Oakland and Somerville to limit annexation, but did not explicitly find that any such agreement would be void or unenforceable.

On November 4, 2005, pursuant to Tennessee Rule of Civil Procedure 54.02, Somerville filed a motion to revise the trial court's order denying Somerville's second motion to dismiss, or in

---

[4] In the first appeal, this Court explicitly stated that it did not reach the substantive issue of whether Somerville properly exercised its statutory priority in annexing the Hyneman Property. *See Oakland v. Somerville*, No. W2002-02301-COA-R3-CV, 2003 WL 22309498, at *8 n.6 (Tenn. Ct. App. Oct. 7, 2003).

[5] These arguments were made in Somerville's first motion to dismiss, prior to the first appeal, but were not addressed by the trial court at that time.

the alternative, to certify the matter for interlocutory appeal, pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. Somerville argued that the trial court improperly relied on the *Jefferson County* case in denying its motion to dismiss. Somerville also asked the trial court to hold expressly that any oral agreement between the mayors of Oakland and Somerville to limit annexation would be unenforceable as a matter of law. On August 4, 2006, the trial court granted Somerville's motion in part and denied it in part. Specifically, the trial court held expressly that any alleged agreement between the mayors of Oakland and Somerville would be *ultra vires* and void. It was unpersuaded, however, to change its decision as to the question of annexation, and denied Somerville's motion in that respect. The trial court granted Somerville's request for permission to file an interlocutory appeal.

Meanwhile, on February 17, 2006, while Somerville's motion to revise was pending, Oakland filed a motion for partial summary judgment and to direct entry of final judgment. In its motion, Oakland argued that Somerville had no authority to annex the Hyneman Property because Oakland had already annexed the Hyneman Property by passing the Oakland Ordinance on final reading. Also, Oakland disputed Somerville's assertion of the defense of laches, arguing that there was no unreasonable delay. The trial court did not immediately address Oakland's motion.

Later, Oakland apparently realized that the copy of the Oakland Ordinance attached to its August 6, 2001 complaint was incomplete. The complete Oakland Ordinance consists of three pages, but the second page, containing the bulk of the legal description of the property to be annexed, was omitted from the copy of the Oakland Ordinance that was attached to the Complaint. Consequently, in January 2007, Oakland filed an Errata attaching a complete copy of the Oakland Ordinance. Somerville filed a response opposing Oakland's Errata.

On March 20, 2007, Somerville filed a motion for summary judgment. Somerville noted that the official record of the Oakland Ordinance was missing the second page. It asserted that, as a consequence, the official record lacked an adequate description of the property to be annexed and was invalid. From this, Somerville argued that Oakland's claims against Somerville, which were based on the validity of the Oakland Ordinance, were likewise invalid. In addition, Somerville reasserted the doctrine of laches as another bar to Oakland's claims.

On August 28, 2007, the trial court entered an order disposing of both summary judgment motions. Specifically, the trial court found that there was no fundamental change in the position of the parties as a result of the page missing from the Oakland Ordinance, and denied Somerville's motion for summary judgment on that issue. The trial court also denied Somerville's motion as to the issue of laches, finding that Oakland's delay in filing its complaint was not negligent and did not involve inexcusable delay. Finally, the trial court granted Oakland's motion for summary judgment in part, finding that, by the time Somerville acted to pass the Somerville Ordinance, Oakland had

already annexed the Hyneman Property. It concluded that Somerville did not begin its annexation proceedings in time to take advantage of its statutory priority as to the Hyneman Property.[6]

On September 19, 2007, the trial court made its judgment final under Rule 54.02 of the Tennessee Rules of Civil Procedure, finding no just cause for delay. Tenn. R. Civ. P. 54.02. Somerville then filed this appeal.[7]

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Somerville raises three issues:

> 1. Whether Somerville timely initiated its annexation proceeding to take advantage of its statutory priority, pursuant to Tennessee Code Annotated § 6-51-110.
> 2. Whether the doctrine of laches bars Oakland from challenging the Somerville Ordinance.
> 3. Whether the Oakland Ordinance contains a sufficient description of the property to be annexed.

Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (citation omitted). Therefore, our review is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997) (citation omitted).

## ANALYSIS

We consider first Somerville's argument that it initiated its proceedings to annex the Hyneman Property in time to take advantage of its statutory priority, pursuant to Tennessee Code Annotated § 6-51-110. The statute provides, in part:

> If two (2) municipalities that were incorporated in the same county shall initiate annexation proceedings with respect to the same territory, the proceedings of the municipality having the larger population shall have precedence and the smaller municipality's proceedings shall be held in abeyance pending the outcome of the proceedings of such larger municipality.

T.C.A. § 6-51-110(b) (2005). Somerville argues that the statute is applicable because it initiated its annexation proceedings before the effective date of the Oakland Ordinance, giving it statutory

---

[6]The trial court noted that the Somerville Ordinance annexed property other than the Hyneman Property. It found that Somerville's annexation was valid except as to the Hyneman Property.

[7]Because the trial court's judgment was certified as final under Rule 54.02 of the Tennessee Rules of Civil Procedure, no interlocutory appeal was filed.

priority to annex the Hyneman Property, and that consequently, Oakland's annexation proceedings must be held in abeyance pending the outcome of Somerville's proceedings. Oakland contends that Somerville waited too late to initiate its annexation proceedings, and lost its statutory priority. By the time Somerville began its annexation process, Oakland had already passed the Oakland Ordinance on final reading and thus had annexed the Hyneman Property, foreclosing Somerville's opportunity to assert its priority. In its brief to this Court, Oakland summarized the issue as follows:

> If Oakland's annexation proceeding ended upon the expiration of its *quo warranto* period, then Somerville will prevail since Oakland's annexation proceeding was stayed. If Oakland's annexation proceeding ended upon passing its annexation ordinance, then Oakland will prevail. Somerville's initiation of annexation proceeding[s] stayed nothing and its right to assert priority ended on September 30, 1999.

Put differently, we must determine whether the operative date for section 6-51-110(b) is (1) the date that the smaller municipality passes its annexation ordinance on final reading, or (2) the date that the smaller municipality's annexation ordinance becomes effective, ninety days after passage.

In its carefully reasoned order, the trial court examined in detail the two primary cases relied upon by the parties. Somerville relied upon *City of Gallatin v. City of Hendersonville*, 510 S.W.2d 507 (Tenn. 1974), and Oakland relied upon *Jefferson County v. City of Morristown*, No. 03A01-9810-CH-00331, 1999 WL 817519 (Tenn. Ct. App. Oct. 13, 1999). After reviewing both cases, the trial court found that *City of Gallatin* was not controlling because its statement that Gallatin had statutory priority under the predecessor to section 6-51-110(b) was *dictum*, and that the real issue in the *City of Gallatin* case was whether the City of Hendersonville had standing to contest the legality of Gallatin's annexation proceedings. The trial court found controlling the holding in *Jefferson County* that property is considered "annexed" when an annexation ordinance is passed upon final reading, regardless of the effective date of the ordinance. Relying on *Jefferson County*, the trial court held that Oakland's annexation of the Hyneman Property occurred when it passed the Oakland Ordinance on final reading, and that Somerville waited too late to exercise its statutory priority under section 6-51-110(b). On appeal, both parties again rely on these cases, so we will review them.

In support of its position that the operative date is the effective date of the smaller municipality's ordinance, Somerville relies on *City of Gallatin*. In that case, the cities of Gallatin and Hendersonville were both municipalities in Sumner County; both attempted to annex the same property. *City of Gallatin*, 510 S.W.2d at 507. Gallatin was the larger of the two cities. *Id.* at 508. On October 9, 1971, Hendersonville passed its ordinance on final reading, annexing the disputed property. *Id.* Three days later, on October 12, 1971, Gallatin initiated proceedings to annex the same property. *Id.* at 507–08. Gallatin filed suit against Hendersonville, alleging that, as the larger municipality, it had priority over Hendersonville pursuant to Tennessee Code Annotated § 6-317,

the predecessor to Tennessee Code Annotated § 6-51-110.[8] *Id.* at 508. In response, Hendersonville alleged that Gallatin's annexation proceedings were illegal because they were not held in conformity with State statutes or Gallatin's charter. *Id.* In addition, Hendersonville argued that the priority provision in section 6-317 did not apply because Hendersonville had already annexed the disputed property. *Id.* On a motion for summary judgment, the trial court ruled that, as the larger municipality, Gallatin had priority over Hendersonville pursuant to Tennessee Code Annotated § 6-317, and that Hendersonville's annexation proceedings concerning the disputed property should be held in abeyance pending the final outcome of Gallatin's annexation proceedings. *Id.*

The Court of Appeals affirmed the trial court's ruling on the issue of priority, but determined that the priority issue was not the only issue that should have been addressed by the trial court. *Id.* The Court of Appeals held that Hendersonville had raised the issue of the legality of Gallatin's annexation ordinance and remanded the case for a trial on the merits on whether Gallatin's annexation proceedings conformed with state statutes and Gallatin's charter. *Id.*

The Tennessee Supreme Court agreed with the Court of Appeals' holding on the issue of priority, but nonetheless reversed the judgment of the Court of Appeals. *Id.* It found that, although it was necessary for Gallatin's annexation proceedings to conform to State statutes and the city charter in order to be valid, the "real issue" was whether Hendersonville had standing to challenge the legality of the Gallatin ordinance. *Id.* The Supreme Court determined that Hendersonville did not have standing under Tennessee Code Annotated § 6-310 because it was not an "aggrieved owner of property lying within territory which is the subject of an annexation ordinance."[9] *Id.* at 509; *see* T.C.A. § 6-310 (1971). In conclusion, the Supreme Court stated that "[t]he Legislature, by [Tennessee Code Annotated] § 6-317 in cases such as this, has given the larger of the two cities priority. Gallatin has chosen to exercise its priority." *City of Gallatin*, 510 S.W.2d at 509.

Somerville notes that Gallatin, like Somerville, initiated its annexation proceedings after the passage on final reading but before the effective date of the annexation ordinance of the smaller municipality. Therefore, Somerville argues, under *City of Gallatin*, it is entitled to statutory priority

---

[8]The relevant language in section 6-317 and section 6-51-110 is nearly identical. Section 6-317 stated in pertinent part: "If two (2) municipalities shall initiate annexation proceedings with respect to the same territory, the proceedings of the municipality having the larger population shall have precedence and the smaller municipality's proceedings shall be held in abeyance pending the outcome of the proceedings of such larger municipality." T.C.A. § 6-317 (1971).

[9] Section 6-310 provided in pertinent part:

Any aggrieved owner of property lying within territory which is the subject of an annexation ordinance prior to the operative date thereof, may file a suit in the nature of a quo warranto proceeding in accordance with §§ 6-308–6-320 and chapter 28 of title 23, to contest the validity thereof on the ground that it reasonably may not be deemed necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole and so constitutes an exercise of power not conferred by law.

T.C.A. § 6-310 (1971).

as the larger municipality. In response, Oakland points out that the Court in *City of Gallatin* stated that the "real issue" before it was standing, and argues that the Court's comments about Gallatin's priority were *obiter dictum* and not controlling.[10]

Clearly, the lion's share of the analysis in *City of Gallatin* centered on the issue of standing. However, the Supreme Court started its analysis of the standing issue by noting that it had already been determined that "Gallatin being the larger of the two cities has priority and that Gallatin did timely initiate proceedings to annex this territory." *Id.* at 508. Before the Court concluded its opinion, it once again stated that in this situation the Legislature gave the larger municipality priority and Gallatin chose to exercise its priority. *Id.* at 509.

Most importantly, to determine whether the Court's statement on statutory priority was *dictum*, we must look at whether the holding was necessary to its ultimate decision. In *City of Gallatin*, Hendersonville's attack on Gallatin's annexation was twofold; it asserted that (1) Gallatin's annexation proceedings were illegal because they were not in conformity with State statutes or Gallatin's charter, and (2) section 6-317 "was not applicable as Hendersonville had already annexed the territory in question." *Id.* at 508. If Hendersonville succeeded in *either* argument, it would prevail. The fact that Hendersonville did not have standing to challenge the legality of Gallatin's annexation proceedings did not preclude Hendersonville from arguing that Gallatin did not have statutory priority under section 6-317 because "Hendersonville had already annexed" the property in dispute. The *City of Gallatin* court ultimately reinstated the decision of the trial court, which required that Hendersonville's annexation proceedings be held in abeyance pending the final outcome of Gallatin's annexation proceedings. *Id.* at 509. This conclusion could not be reached in the absence of a holding that Gallatin had statutory priority under the predecessor to section 6-51-110. Therefore, we find that this holding was not *dictum*.

Nevertheless, we acknowledge that the holding in *City of Gallatin* was a bare conclusion, accompanied by no analysis. The facts in *City of Gallatin* are similar to those presented in the instant case in that the larger municipality initiated its annexation proceedings after the smaller municipality had passed its annexation ordinance on final reading but before its effective date. However, we have no way of knowing if the Court considered the issue of whether the pivotal date under the annexation priority statute was the date of passage upon final reading or the later effective date.

We now address the applicability of *Jefferson County*, cited by Oakland in support of its position. In *Jefferson County*, the City of Morristown, located in Hamblen County, purchased options on acreage located partly in neighboring Jefferson County. *Jefferson County*, 1999 WL 817519, at *1. On April 21, 1998, Morristown passed, on final reading, annexation ordinances that included the Jefferson County property. *Id.* at *2. Meanwhile, Jefferson County passed a resolution

---

[10]*Obiter dictum* is the Latin term for "something said in passing." BLACK'S LAW DICTIONARY 1100 (7th ed. 1999). In legal usage *dictum* is "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)." *Id.*

stating that Morristown "did not have its consent" to construct Morristown's project on the Jefferson County property. *Id.*

During this same time period, the Tennessee legislature enacted a new annexation law, Tennessee Code Annotated § 6-58-108(e), which stated that "[a]fter May 19, 1998, a municipality may not annex" territory in another county. *Id.* It provided, however, that it would "not affect any annexation ordinance adopted on final reading by a municipality prior to May 19, 1998." *Id.* The *Jefferson County* court considered the applicability of that statute. *Id.* at *7–9.

Jefferson County argued that the statute was applicable because, although Morristown's annexation ordinance was passed on April 21, 1998, the effective date of the ordinance fell *after* May 19, 1998. *Id.* at *8. Morristown argued that the statute did not apply to prohibit its annexation of the Jefferson County property because its annexation ordinance passed on final reading before May 19, 1998, regardless of the effective date of the ordinance. *Id.*

The *Jefferson County* court stated that whether section 6-58-108(e) applied "depends on when a territory is considered 'annexed.' " *Id.* It held that, in determining the applicability of the statute, "a territory should be considered 'annexed' when an annexation ordinance is passed upon final reading." *Id.* It stated that the delay in the effective date, "in and of itself, does not change the fact of annexation; it simply postpones the date on which the annexation becomes 'operative.' " *Id.* The *Jefferson County* court went on to note that the statute expressly exempted municipal annexation ordinances which were "adopted on final reading . . . prior to May 19, 1998," thus "defin[ing] its applicability in terms of 'final reading' and not in terms of operative date." *Id.* at *9. Thus, in *Jefferson County*, the Court addressed the applicability of an annexation statute other than section 6-51-110, and did not involve the priority issue.

Oakland rightly points out that *Jefferson County* contains broad language stating that property is considered "annexed" when an annexation ordinance "is passed upon final reading," rather than its effective date. While this is true, in the case at bar, the date of "annexation" is not, strictly speaking, the pivotal issue. The statute at issue in this case, section 6-51-110(b), states that, when two municipalities in the same county initiate annexation proceedings as to the same property, the proceedings of the larger municipality "shall have precedence" and "the smaller municipality's proceedings *shall be held in abeyance* pending the outcome of the proceedings of such larger municipality." T.C.A. § 6-51-110(b) (2005) (emphasis added). The statute, then, mandates that any annexation "proceedings" by Oakland "shall be held in abeyance" pending the outcome of Somerville's annexation proceedings. Thus, the question is not whether there is anything remaining for the legislative body of the smaller municipality to do to bring about the annexation. Rather, the question is whether, at the time Somerville passed the Somerville Ordinance, Oakland still had annexation "proceedings" underway that could be "held in abeyance" under the terms of section 6-51-110(b).

We find that it did. It is undisputed that, during the ninety-day period after final passage but prior to the effective date, an annexation ordinance may be challenged in a *quo warranto* action under Tennessee Code Annotated § 6-51-103. This Court has held that, when this occurs, the annexation proceedings are held in abeyance:

-10-

> When a *quo warranto* action is timely filed to challenge an annexation, the effective date of the challenged annexation ordinance is "held in abeyance" pending the litigation. Moreover, an annexation is not "effective" or "operative" until the ordinance is upheld as valid by the presiding court.

*City of Knoxville v. Knox County*, No. M2006-00916-COA-R3-CV, 2008 WL 465265, at *3 (Tenn. Ct. App. Feb. 20, 2008) (citations omitted). Oakland argues that the ninety-day period before an annexation statute becomes effective is only for the purpose of permitting a *quo warranto* action, not for the purpose of allowing a larger municipality to initiate annexation proceedings on the same property. Whatever the purpose of the ninety-day delay, until the effective date of the annexation ordinance has passed, there are annexation proceedings underway that are subject to being held in abeyance, under either the *quo warranto* statute or under section 6-51-110(b).

We now apply this reasoning to the facts of this case. As noted above, Oakland passed the Oakland Ordinance on final reading on September 30, 1999. By its own terms, the Oakland Ordinance was not to become effective until ninety days later, which would have been December 29, 1999. On October 11, 1999, Somerville passed the Somerville Ordinance. Because Somerville's annexation proceedings were initiated prior to the effective date of the Oakland Ordinance, Somerville's proceedings "have precedence" and Oakland's annexation proceedings must be "held in abeyance" pending the outcome of Somerville's proceedings, pursuant to section 6-51-110(b). This is consistent with the holding of the Tennessee Supreme Court in the *City of Gallatin* case. *City of Gallatin*, 510 S.W.2d at 508. Thus, we must reverse the trial court's holding that Somerville waited too late to assert its statutory priority.

This holding pretermits the other issues raised on appeal, namely, whether the doctrine of laches bars Oakland from challenging the Somerville Ordinance and whether the description of the property to be annexed in the Oakland Ordinance is insufficient. There was no appeal of the trial court's holding as to the enforceability of the alleged annexation agreement between the Somerville and Oakland mayors.

In light of this holding, we reverse the trial court's denial of Somerville's October 19, 2004 motion to dismiss, and reverse the trial court's grant of Oakland's February 17, 2006 motion for partial summary judgment. On remand, the trial court is directed to grant Somerville's motion to dismiss on the basis of its priority under Tennessee Code Annotated § 6-51-110(b).

The decision of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion. The costs of this appeal are taxed to the Appellee, Town of Oakland, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE