IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 22, 2018 Session

## ESTATE OF JOYCE ELAINE MYERS ET AL. v. MICHAEL QUESTELL

**Appeal from the Circuit Court for Warren County**
**No. 16-CV-592      Larry B. Stanley, Jr., Judge**

_____

### No. M2017-01954-COA-R3-CV
_____

Appellants appeal the trial court's grant of summary judgment in favor of Appellee, medical doctor. The trial court found that Appellant's petition for declaratory judgment sounded in health care liability and was barred by the statute of limitations. Tenn. Code Ann. § 29-26-116(a)(1). Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

W. Kennerly Burger, Murfreesboro, Tennessee, for the appellants, Angela Cathey, Annette Lewis, and the Estate of Joyce Elaine Myers.

Daniel H. Rader, III, Cookeville, Tennessee, for the appellee, Michael Questell.

### OPINION

#### I. Background

From 2012 until her death on January 1, 2014, Joyce Elaine Myers ("Decedent") was a patient and resident at NHC Healthcare/McMinnville, LLC ("NHC"). Prior to her admission, Decedent executed an arbitration agreement. Under the agreement, which was signed on December 8, 2011, Decedent agreed "to arbitrate any dispute that might arise between Joyce Myers ("Patient") and NHC McMinnville ("Center")." Angela Cathey and Annette Lewis (together "Appellants") are the Decedent's daughters and her surviving heirs-at-law. Appellants allege that on December 23, 2013, Decedent's blood sugar became dangerously low, and she suffered a hypoglycemic event that rendered her unresponsive. Decedent was taken to the hospital where she was placed in intensive care.

Decedent died on January 1, 2014, the cause of which was brain damage caused by hypoglycemia. Appellants allege that Decedent's treating physician, Dr. Michael Questell ("Appellee"), ordered incorrect dosages of Decedent's diabetes medication, causing the hypoglycemic event that led to her death. At the time of these events, Dr. Questell was the Medical Director for NHC.

On April 17, 2015, Appellants filed a health care liability action against NHC and Dr. Questell in the Circuit Court of Warren County ("trial court"). By order of February 26, 2016, the trial court granted Dr. Questell's motion for summary judgment finding that Appellants "voluntarily and consciously did not serve the summons [on Dr. Questell] amounting to an intentional failure to serve the summons within the meaning of" Tennessee Rule of Civil Procedure 4.01(3).[1] Because Appellants intentionally failed to serve the summons, the trial court held that Appellants could not rely on the filing of the complaint to toll the statute of limitations. As a result, the trial court concluded that the "health care liability action and/or medical negligence claim against Dr. Michael Questell [was] time-barred, and should be dismissed." However, the trial court ordered that the "dismissal of the case [was] without prejudice to the [Appellants'] pursuit of the [Appellants'] claimed rights to compel mandatory arbitration of the issues against Dr. Questell."

On May 20, 2016, Appellants filed a petition for declaratory judgment against Dr. Questell. The petition sought a "declaration of the parties' respective rights, duties, and interests, in the instrument[s] which [were] attached as Exhibit 'A' to the Petition." These instruments were the Decedent's contract for patient residency and the arbitration agreement she executed.[2]

On April 27, 2017, Dr. Questell filed a motion to dismiss or alternatively, for summary judgment. By order of September 8, 2017, the trial court granted Dr. Questell's motion. The trial court found: (1) the case was time barred by the statute of limitations codified at Tennessee Code Annotated section 29-6-101, *et seq.*; (2) there was no agreement or contract between Decedent and Dr. Questell, which would compel him to arbitrate any action brought against him; (3) the case was barred as *res judicata* in that all issues before the trial court were identical to issues presented and previously dismissed; (4) the case was a health care liability action, and Appellants did not comply with the notice and certificate of good faith statutory requirements; and (5) arbitration was not waived because there was no privity of contract between Decedent and Dr. Questell.

---

[1] "If a plaintiff or counsel for a plaintiff (including a third-party plaintiff) intentionally causes delay of prompt issuance or prompt service of a summons, the filing of the complaint (or third-party complaint) will not toll any applicable statutes of limitation or repose." Tenn. R. Civ. P. 4.01(3).

[2] Appellants also named NHC in the action. It appears from the record that Appellants and NHC settled the dispute and a Notice of Dismissal as to NHC Healthcare/McMinville, LLC was filed on October 7, 2016.

## II. Issues

Appellants raise four issues on appeal; however, we perceive that there is one dispositive issue, which we state as follows:

1. Whether this case is a health care liability claim subject to the requirements of Tennessee Code Annotated section 29-26-101, *et seq*.

## III. Standard of Review

This case was decided on a grant of summary judgment. A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997).

## IV. Analysis

Civil actions or claims against a "health care provider" who rendered health care services to an individual are brought under Tennessee Code Annotated section 29-26-101:

> (a) As used in this part, unless the context otherwise requires:
>
> > (1) "Health care liability action" means any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based;
> >
> > (2) "Health care provider" means:
> >
> > > (A) A health care practitioner licensed, authorized, certified, registered, or regulated under any chapter of title 63 or title 68, including, but not limited to, medical resident physicians, interns, and fellows participating in a training program of one of the accredited medical schools or of one of such medical school's affiliated teaching hospitals in Tennessee;
> >
> > ***
>
> (b) Health care services to persons includes care by health care providers, which includes care by physicians . . . .

- 3 -

(c) Any such civil action or claim is subject to this part regardless of any other claims, causes of action, or theories of liability alleged in the complaint . . . .

Tenn. Code Ann. § 29-26-101.

Appellants argue that the arbitration agreement between Decedent and NHC binds Dr. Questell as NHC's Medical Director during Decedent's tenure at the facility. As such, Appellants contend that Dr. Questell should be compelled to arbitrate their claims. Specifically, Appellants argue that their lawsuit is one for declaratory judgment, and, thus, outside the scope of the Tennessee Code Annotated section 29-26-101 definition of a health care liability action, *supra*.

We note that "[i]t is the role of the courts to ascertain the nature of the claim; the designation given to the claim by either party is not determinative." ***Caldwell v. Vanderbilt Univ.***, No. M2012-00328-COA-R3CV, 2013 WL 655239, at \*3 (Tenn. Ct. App. Feb. 20, 2013) (citing ***Brister v. HCA Health Servs.***, No. M2010-01996-COA-R3-CV, 2011 WL 2395218, at \*3 (Tenn. Ct. App. June 8, 2011) (citing ***Estate of French v. Stratford House***, 333 S.W.3d 546, 555 (Tenn. 2011))).

> Appellants' petition for declaratory judgment states, in relevant part:
> 2. That Dr. Questell administered medications which, in combination, produce a cumulative effect in diminishing blood sugar, requiring a heightened sense of urgency in both monitoring significant drops in blood sugar and promptly responding to any emergent indicators. It is contended that Dr. Questell breached the acceptable standard of professional practice both in relation to the dosages administered and the orders referable to those dosages. Deficient record maintenance is a component of that portion of the [Appellants'] claim that Dr. Questell breached the acceptable standard of professional practice.

As noted above, during the relevant time period, Dr. Questell wore two hats at NHC. First, he was the Medical Director, which position was purely administrative in nature. Second, he was Decedent's treating physician. Under Tennessee Code Annotated section 29-26-101(c), "[a]ny such civil action or claim is subject to [the health care liability act] regardless of any other claims, causes of action, or theories of liability alleged in the complaint . . . ." Tenn. Code Ann. § 29-26-101(c). This Court has held that a case is one for a health care liability action when the allegations in the complaint "describe conduct 'which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional.'" ***Ward v. Glover***, 206 S.W.3d 17, 26 (Tenn. Ct. App. 2006) (citing ***Gunter v. Lab. Corp. of Am.***, 121 S.W.3d 636, 641 (Tenn. 2003)).

As set out above, the substantive allegations set out in Appellants' petition for

declaratory judgment clearly target Dr. Questell's medical treatment of Decedent, and not his administrative duties. In its order granting summary judgment to Dr. Questell, the trial court concluded:

> 1. The case is time barred by the statute of limitations codified in Tennessee Code Annotated § 29-26-101, et[] seq. This is an action that falls within the parameters of the Health Care Liability Act of Tennessee. This [c]ourt previously found that the same case was time barred by failure to file within one year of the triggering event. This order was filed February 26, 2016. Nothing has changed with the [Appellants'] failure to file within the one year filing requirement.

> ***

> 4. The current case is without question one of health care liability. The [Appellants were] required to follow the requirement of Tennessee Code Annotated § 29-26-121 and § 29-26-122. It is uncontested that the "Notice of Filing" and "Certificate of Good Faith" were not done as required by those statutes.

Turning to the record, Dr. Questell had two separate and distinct sets of duties while working at NHC. First, he was the Medical Director, tasked with administrative responsibilities. With regard to his administrative work, Dr. Questell testified:

> Q: As I understand, you were paid [$]24,000 per year under the medical director's agreement with NHC, [$]2,000 a month. Can you clarify for me on a day-to-day basis specifically your perception – your recollection I guess is a better word – of what you actually did to earn that $2,000 per month/the [$]24,000 per year that NHC paid you.

> A: Yeah, that was for administrative things. They had to have a medical director to oversee their policies and procedures to make sure that they were in compliance with, you know, the federal and state regulations. If there was a problem say with, you know, the cleanliness or the way the medications were administered – you know, administrative type things – I was to oversee all that. If there was a – say that we wanted to have a new policy on how we dealt with diabetics, then I would have to review that policy.

> ***

> Q: Was the pay that you received, the [$]24,000 per year, was that at least partially for physician services that you were available to perform for all of

the NHC patients on the premises?

A:  No, uh-huh.  No, because, you know, I had my patients; other doctors had their patients.

Apart from his Medical Director duties, Dr. Questell was also a private physician for *some* of the residents of NHC.  In his deposition, Dr. Questell explained that he was Decedent's primary care physician and the only doctor treating her at NHC.  Dr. Questell also explained the differences between his administrative work as the Medical Director and his work as a private physician for individual residents at NHC, including Decedent.  Dr. Questell testified to the difference between his Medical Director pay and duties and his private practice pay and duties as follows:

Q:  As far as the general NHC patients – in other words, not those that you considered your patients but general patients there at NHC, as a part of your duties, did you find it necessary – were you asked to review each of the NHC patient's sort of overall condition there to follow-up on their/to keep an eye on their care and their medication and treatment?

A:  No, I was never asked to review a chart from another doctor's patient. That wasn't part of my duties.

***

Q:  Well, as it relates to your dealings with, I would say, the average nursing home patient there, someone who you did not have a chart at your office for, as to those individuals, did you feel that you had a doctor/patient relationship with those nursing home residents, that you were checking up on their medications or checking up on their overall treatment, or not? . . . Any of those patients, did you feel that you had a physician/patient fiduciary duty as far as checking up on their medical condition, checking up on their medications? HIPAA compliant confidentiality as to them, did you feel like you had a doctor/patient relationship with them, or not . . . .

A:  No.  In fact, I most – unless – no.  Unless I had a call, a specific reason to, I wouldn't even know who those patients were.  I would never had met them.  I never would have seen them.  I never would have looked at their chart.  I would have nothing to do with those patients.  It's almost like they were in a separate building.

***

Q:  -- you were not being paid by the nursing home to have anything to do

with those other patients --

A: Correct.

Q: -- as far as monitoring their medications and checking up on them, and that sort of thing.

A: Absolutely, correct.

Furthermore, the Medical Director Agreement between Dr. Questell and NHC, which provides for Dr. Questell's duties as Medical Director, demonstrates that Dr. Questell maintained a separate practice as a physician for certain patients residing at NHC. The Medical Director Agreement provides the following with regard to compensation:

**5. Compensation[:]**

5.1 Center will pay Physician for the performance of the Services, the sum of twenty-four thousand dollars ($24,000) per year, payable in twelve (12) monthly installments of two thousand dollars ($2,000). **Center shall not pay Physician for professional services rendered by Physician to individual patients of the Center.**

(Emphasis added). The Medical Director Agreement also provides the following with regard to insurance:

**7. Insurance:**

7.1 Center shall maintain, on behalf of Physician, $1 million per occurrence and $3 million cumulative professional liability insurance to cover Physician for medical director services provided under this Agreement. Center shall deliver to Physician, upon Physician's written request, satisfactory evidence of such insurance.

7.2 **If Physician also serves as attending or consulting physician for individual patients of Center, Physician shall obtain and maintain throughout the Term of this Agreement adequate general and professional liability insurance.**

(Emphasis added). Additionally, at oral argument, Appellants' attorney confirmed that Dr. Questell had been Decedent's treating physician prior to her admission and, while Dr. Questell allegedly mistreated Decedent, he did not make any administrative mistakes as

Medical Director.

Following our review of Appellants' petition and the record in this case, we agree with the trial court's designation of this case as a health care liability action. The petition alleges that Dr. Questell: (1) incorrectly "administered medication"; (2) failed to recognize Decedent's "emergent indicators"; and (3) "breached the acceptable standard of professional practice both in relation to the dosages administered and the orders" pertaining to Decedent. Although Appellants' petition states that Dr. Questell was negligent in his record keeping, this allegation does not negate the trial court's designation of the case as one for health care liability. The "record keeping" at issue here involves Dr. Questell's patient records, not the administrative records of NHC, which he may have kept in the course of his Medical Director duties. Furthermore, Appellants do not take issue with the way in which Dr. Questell conducted himself as the Medical Director. The record demonstrates that Appellants' claims against Dr. Questell concern his conduct and responsibilities as Decedent's primary physician and not as NHC's Medical Director. As such, the case clearly describes conduct that required medical expertise and the rendition of medical treatment. *Caldwell*, 2013 WL 655239, at \*4. Accordingly, the case is subject to the statutory requirements set out in the health care liability act, and is time-barred under Tennessee Code Annotated section 29-26-116(a)(1).[3]

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against Appellants, Angela Cathey, Annette Lewis, and the Estate of Joyce Elaine Myers, and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

---

[3] Appellants' attorney admitted at oral argument that the statute of limitations had expired for bringing a health care liability claim against Dr. Questell.